1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
2                         COVINGTON DIVISION

3    JOHN SCHICKEL,              . Docket No. CV 15-155
                                 .
4         Plaintiff,             . Lexington, Kentucky
                                 . January 28, 2016
5              v.                . 1:00 p.m.
                                 .
6    CRAIG C. DILGER, ET AL.,    . Oral Argument/Preliminary
                                 .     Pretrial Conference
7         Defendant.             .
     . . . . . . . . . . . . . .

8
                         TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE WILLIAM O. BERTELSMAN
                    UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     For the Plaintiff:    Mr. Christopher David Wiest
12                         Christopher Wiest, Atty at Law,
                              PLLC
13                         25 Town Center Boulevard
                           Suite 104
14                         Crestview Hills, KY 41017

15                         Mr. Jack S. Gatlin
                           Freund, Freeze & Arnold - Ft.
16                            Mitchell
                           2400 Chamber Center Drive
17                         Suite 200, Chamber Office Park
                           Ft. Mitchell, KY 41017
18
     For the Defendant:    Ms. Emily Dennis
19                         Kentucky Registry of Election
                              Finance
20                         140 Walnut Street
                           Frankfort, KY 40601
21
                           Mr. Matthew Douglas James
22                         Office of Attorney General - KY
                           700 Capital Avenue
23                         Suite 118
                           Frankfort, KY 40601
24

25

```
 1  APPEARANCES (Cont.):

 2  Court Reporter:      K. Ann Banta, RPR, CRR
                         101 Barr
 3                       Lexington, KY 40507
                         (502) 545-1090
 4
    Proceedings recorded by mechanical stenography,
 5  transcript produced by computer-aided transcription.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1                        Thursday afternoon session,

 2                        January 28, 2016, 1:00 p.m.

 3                           - - -

 4          THE COURT:  This is the case of -- I don't

 5  know where that one came from.

 6          This is the case of Schickel v. Dilger,

 7  15-155, attacking the constitutionality of various

 8  lobbying and campaign financing restrictions in effect

 9  in Kentucky.

10          The case has been pending awhile, I thought

11  while we are here we would set some -- decide how you

12  want to follow through with it.

13          Aren't the -- aren't the legislative

14  elections this year?

15          MR. WIEST:  They are, Your Honor.

16          THE COURT:  You got to get through the Court

17  of Appeals --

18          THE COURT REPORTER:  I need you to identify

19  yourself.

20          MR. WIEST:  I'm sorry, Chris Wiest.

21          THE COURT:  I'm sorry, everybody note their

22  appearances, if you would, please.

23          MR. GATLIN:  Jack Gatlin on behalf of the

24  plaintiff.

25          MS. DENNIS:  Emily Dennis on behalf of Craig

1 Dilger, John Steffen and the other members of the

2 Registry.

3          THE COURT:  Sounds like you need one of my

4 cough drops.

5          MS. DENNIS:  Sorry about that.

6          THE COURT:  That's okay, I have been fighting

7 a cold all through the month.  Who else is over here?

8          MR. JAMES:  Matt James, Assistant Attorney

9 General on behalf of the Legislative Ethics Commission

10 defendants.

11          THE COURT:  Anybody we haven't had yet?

12 Okay.

13          Okay, so as I was saying, we can't -- I don't

14 think we are going to get -- I can get done by the end

15 of the year or maybe the middle of the summer, but I

16 don't think you can get it through the Court of

17 Appeals by that time, whoever loses; but we will forge

18 ahead as best we can.

19          Okay, so both the -- with some lobbying

20 restrictions by the legislature being attacked and

21 also the campaign contribution limitations, and we

22 have here today a motion to dismiss by the agency that

23 enforces the lobbying restrictions.

24          So I read it all, but let me hear you briefly

25 to be sure I haven't missed anything.

1          MR. JAMES:  Well, may it please the court,

2   I'll just kind of go through my speech, and if at any

3   point -- I'll summarize it briefly, and if at any

4   point you want to jump ahead just let me know and I'll

5   address any issues you might have.

6          But basically this is a motion to dismiss on

7   two grounds, first, on standing grounds.  That

8   standing argument has two parts.

9          One, plaintiff's challenge lobbying

10  restrictions even though none of them are lobbyists

11  and none of them will be subject to any of those

12  provisions.

13         THE COURT:  And they might get in trouble if

14  they let a lobbyist buy them a cup of coffee or a

15  drink or sandwich.

16         MR. JAMES:  But I would emphasize that that

17  is potentially true, and the second part of that

18  standing argument is that plaintiffs haven't done

19  anything or much less anything that would subject them

20  to a credible threat of enforcement.  Everything that

21  they argue --

22         THE COURT:  You realize in a First Amendment

23  case you don't have to actually violate it to risk

24  going to jail, so I think they have standing.

25         MR. JAMES:  All right, well, that makes my

1 job a little easier, or harder.

2          THE COURT:  We have had all this before.  We

3 had this yard sign thing last year, and it went to the

4 Court of Appeals and they said people had standing

5 they wanted to put up a yard sign.

6          MR. JAMES:  I understand Mr. Wiest is a bit

7 of a frequent flyer here.

8          MR. WIEST:  And Mr. Gatlin.

9          MR. JAMES:  And Mr. Gatlin.

10          THE COURT:  So the other part I think you

11 need to address --

12          MR. JAMES:  Uh-huh.

13          THE COURT:  -- is whether -- is whatever the

14 term is narrowly drawn, whatever the Supreme Court had

15 said, it isn't exactly that; but it's not quite strict

16 scrutiny, it's something less.

17          But nevertheless their argument is -- and if

18 I say it wrong you can correct me -- but their

19 argument is that if let's say they would go to a

20 funeral of a -- and they have a -- serving

21 refreshments after the funeral and invite a lobbyist

22 they wouldn't be allowed to eat anything that is

23 ridiculously confining.  What's your answer to that

24 argument?

25          MR. JAMES:  Well, it's not necessarily

1  ridiculously confining.

2          The standard is closely drawn scrutiny which

3  is closely drawn to match a sufficiently important

4  interest and sort of kind of the middle ground between

5  strict scrutiny and rational basis, but as regards to

6  attending a funeral, they are perfectly free to attend

7  a funeral as long as they don't get anything of value

8  at that funeral.  And moreover, if for instance --

9          THE COURT:  The funerals I attend lately -- I

10 picked that because unfortunately I have had to attend

11 some recently -- everybody has served refreshments in

12 a restaurant or something.

13          MR. JAMES:  That in itself would not

14 necessarily violate the lobbying restrictions if

15 everybody is invited, for instance --

16          THE COURT:  That's not what it says.

17          MR. JAMES:  There are exemptions for -- I

18 don't know funerals would be invited to everybody in

19 the House, but as long as the invitation is extended

20 to, for instance, the House or the Senate generally.

21          THE COURT:  That's common sense, but I don't

22 think that's what -- does it say that?  It doesn't say

23 that.

24          I am asking the plaintiffs.  It doesn't say

25 that, does it?  There is exemptions for --

1          MR. WIEST:  There is no -- there is no

2  exemption on anything of value, and that's sort of an

3  undefined term, what does that mean?  That's one of

4  our issues.

5          THE COURT:  That's your argument.

6          MR. WIEST:  But that is one issue, yes.

7          THE COURT:  That, frankly, is why it seems to

8  me it may not be closely drawn.

9          They had the -- a number of de minimis

10  exceptions, the kind that you are mentioning, but they

11  repealed them.

12          MR. JAMES:  They did.

13          THE COURT:  So they don't have them any

14  more.

15          MR. JAMES:  They do not.

16          THE COURT:  So that's their argument, and I

17  -- you wanted to add to your argument?

18          You argued it needs evidence to flesh it out,

19  how it actually would affect people?

20          MR. WIEST:  I think that's part of it,

21  Your Honor, and just to be clear, there is two aspects

22  of the challenge.

23          One is the actual taking of a donation or the

24  giving of a donation on the side of that.

25          THE COURT:  Well, we are not on that, we are

1 on the lobbyist.

2        MR. WIEST:  Well, that's right, but part of

3 what the -- a lobbyist being able to donate or a

4 lobbyist --

5        THE COURT:  That's another part.

6        MR. WIEST:  Right, there is also a

7 solicitation issue, and actually I want to be clear

8 with the court, we think the solicitation issue -- and

9 this is in KRS I believe it is 6.751, Subsection 2

10 actually prevents a legislator or a spouse from

11 soliciting, accepting or agreeing to accept anything

12 of value.

13        It also prevents on the other side of it

14 6.811 of a legislative agent serving as a campaign

15 treasurer and not directly soliciting or controlling

16 or delivering a campaign contribution.

17        So you don't just have this actual money

18 flowing on one side or the other, you have actually

19 got pure speech.

20        And I just want to be clear with the court

21 under the Green Party of Connecticut v. Garfield case,

22 the court was very clear, that specific narrow issue

23 is actually subject to strict scrutiny, so we are not

24 just looking at closely drawn on that --

25        THE COURT:  What's it say again?

1          MR. WIEST:  It says that when you are talking

2   about pure speech, when you are talking about this

3   soliciting on behalf of --

4          THE COURT:  What's the statute say?

5          MR. WIEST:  It's 6.811 and then it -- 6.751,

6   but it says, "The legislative agent shall not serve as

7   a campaign treasurer" -- and this is Subsection 5 --

8   "shall not directly solicit, control or deliver a

9   campaign contribution.

10          So we are not dealing with the actual

11   contribution itself, we are actually dealing with the

12   solicitation and the speech.

13          And, again, Green Party of the Second Circuit

14   said that is strict scrutiny.

15          The rest I agree with the Attorney General's

16   office, at least in terms of the analysis.  The rest

17   is subject to the closely drawn standard.

18          THE COURT:  Okay.

19          MR. WIEST:  And I think, Your Honor --

20          THE COURT:  What is your position?  Do you

21   want to have some discovery on this?

22          MR. WIEST:  I think we would like to take

23   some discovery on this issue.

24          We have actually got two experts that we are

25   going to be presenting in connection with this case,

1  and that's why we have not filed a motion for

2  injunctive relief yet.

3          I don't have a problem identifying one of

4  them right now, and he was actually -- I am trying to

5  -- he is out of Virginia, and Vermont, I think Clark

6  Benson is his name; and he was actually the expert in

7  the Randall v. Sorrell case for the Vermont

8  challenge.

9          He's not done with his analysis yet on kind

10 of the campaign finance issues, but -- but I -- we

11 would like to finish our expert issues, I think in

12 support of a motion, and that's why we have not filed

13 for a preliminary injunction or for a permanent

14 injunction yet.

15         They need to finish, but we do need some

16 discovery from the defendant --

17         THE COURT:  Okay, well, I do think this is

18 premature.  I am not saying the statute is not valid.

19         But we need to see -- have some evidence on

20 how it works, what a lobbyist is, who is likely to be

21 a lobbyist, who is likely to be employed by a

22 lobbyist.

23         I am sure these folks get around more than

24 the rest of us, to run into a lobbyist just in

25 everyday life, may want to sit down and have lunch

1  with him or send him a Christmas card or receive a

2  Christmas card or a modest gift or something like

3  that.

4          I think the fact that they had these --

5  frankly, that they had these de minimis restrictions

6  and then appealed them raises an issue of whether the

7  statute is closely drawn.

8          But I do think we need discovery, and

9  definitely I think we need it in the contributions

10 part.

11         The McConnell case says, let's see, I have

12 got the language here, I can't remember, the McConnell

13 case says the limit can't be so low that to burden --

14 the candidate can't wage an effective campaign.

15 That's not the exact language.

16         MS. DENNIS:  Your Honor --

17         THE COURT:  So that would differ a lot

18 between, say, a race for state senator and a race for

19 councilman in the City of Southgate, and I think we

20 need evidence on how all that works.

21         MS. DENNIS:  Your Honor --

22         THE COURT:  Yes.

23         MS. DENNIS:  May I address --

24         THE COURT:  Yes, you may.

25         MS. DENNIS:  -- on this issue?  I know that's

1  not the motion before you.

2          THE COURT:  I know, I am just saying we need

3  some discovery on it.

4          MS. DENNIS:  Yes, sir, but may I address the

5  court?

6          THE COURT:  Sure.  I am not ruling on it, I

7  am just saying we need some discovery.

8          MS. DENNIS:  Right.  First of all, I would

9  like to argue that the Eastern District of Kentucky is

10  an inappropriate venue to hear David Watson's claim.

11          He doesn't live in the Eastern District of

12  Kentucky, he lives in the Western District of

13  Kentucky.

14          THE COURT:  Okay.

15          MS. DENNIS:  And he has a claim that is

16  distinct to the other plaintiffs.

17          It's in the record on page 17 at footnote 4.

18  It deals with caucus campaign committees.

19          THE COURT:  Uh-huh.

20          MS. DENNIS:  So it's not -- he doesn't have

21  identical questions of fact in law.

22          THE COURT:  Okay, have you made a motion to

23  have him stricken or severed out or something?

24          MS. DENNIS:  Well, I haven't made a written

25  motion, I raised the defense in my answer.

1          THE COURT:  You have to make a motion, bring

2  the defense on for a hearing.

3          MS. DENNIS:  Okay.

4          MR. WIEST:  Your Honor, just to cut that

5  short, the defendants are all official capacity

6  defendants.  They are located within the Eastern

7  District of Kentucky in Frankfort, and so we believe

8  that both personal jurisdiction and venue is

9  appropriate in this district because of where the

10 defendants are; and I think there is case law out on

11 that.

12         THE COURT:  The interdivisional part might

13 not be.

14         MR. WIEST:  Right.

15         THE COURT:  But that's a lot looser than

16 statutory.

17         MR. WIEST:  Yes, Your Honor.

18         THE COURT:  You will have to make a motion.

19 I can't just make a guess at that.

20         MS. DENNIS:  Okay.

21         THE COURT:  You have to give the other side a

22 chance to be heard.

23         MS. DENNIS:  Right, right.

24         THE COURT:  I think Rule 12 provides for you

25 to make a motion on any affirmative defense to be

1  ruled on by the court.  So you will have to do that in

2  a brief.

3             MS. DENNIS:  Okay.

4             THE COURT:  What's this gentleman running

5  for?

6             MS. DENNIS:  State Representative.

7             THE COURT:  From the Western District, from

8  western Kentucky.

9             MS. DENNIS:  He is from western Kentucky,

10  yes, sir.

11             And there is -- there is some other issues,

12  but I guess I need to just brief them.

13             THE COURT:  Right, well, I think we already

14  ruled on the people in the Eastern District would

15  apply to people in the Western District, but maybe he

16  is not a proper party here, I don't know.

17             MS. DENNIS:  Well, his claim -- he has a

18  claim that is distinct to all the other plaintiffs'

19  claims.

20             THE COURT:  A different argument or issue

21  or --

22             MS. DENNIS:  Yeah, different issues.  He is

23  claiming that one of our statutes, KRS 121.15011 is

24  unconstitutional and it applies only to him and not to

25  the other two plaintiffs.

1           THE COURT:   Schickel is running for State

2    Senator.

3           MS. DENNIS:   Right, but he is not arguing

4    that that statute is unconstitutional.

5           THE COURT:   Oh, okay.

6           MR. WIEST:   That's the statute, Your Honor,

7    where they have hard coded the Republican and

8    Democratic parties into the statute in terms of what

9    their caucus committees can do, and they have created

10   a special exception just for those two political

11   parties which raises some very serious constitutional

12   issues.

13          THE COURT:   Right, well, you make any motion

14   you want to make.

15          MS. DENNIS:   Right, I will do that,

16   Your Honor.

17          I mean, frankly, I am not sure that these

18   issues are even appropriately before the Federal

19   Court.

20          It can be resolved by the legislature.   There

21   is legislation pending now --

22          THE COURT:   Well, if it passes it might make

23   it moot.   I don't know.

24          MS. DENNIS:   That would change the law and

25   everything --

1            THE COURT:  Then it would be moot, wouldn't

2  it?

3            MS. DENNIS:  Yeah, and actually, I mean, it

4  wasn't filed -- it's got bipartisan support in the

5  House and --

6            THE COURT:  We can't guess what the

7  legislature is going to do.

8            MR. WIEST:  And to be fair on the status,

9  Your Honor, I think they tried it last session and it

10  did not pass at the end of the day, and we don't --

11  the sausage-making process in Frankfort, we don't know

12  what's going to happen.

13            THE COURT:  You can make a motion, and you

14  can see what they do and then make a motion if you

15  want.  You can make it whenever you think you want to

16  make it.

17            No use making it twice, so I'll leave it to

18  you when you want to make it.

19            Okay, now, how do you want to proceed with

20  the rest of the case?

21            MS. DENNIS:  Okay.

22            THE COURT:  Do you see it as developing a

23  record and have cross motions for summary judgment, or

24  do you see it as going to a trial?  I'll address the

25  plaintiffs.

1            MR. JAMES:  Your Honor, if I could ask for a

2    clarification.

3            You said that the discovery would be needed

4    on at least the repeal of the de minimis restriction

5    at least.

6            THE COURT:  Right.

7            MR. JAMES:  But as regarding all the other

8    provisions --

9            THE COURT:  That's what I am getting to.

10           MR. JAMES:  All right, Your Honor, I'll let

11   you get to that.

12           MR. WIEST:  Your Honor, there are some

13   challenges here that I think are -- are facial

14   constitutional issues that clearly could be resolved

15   with cross motions, and I think there is other issues

16   here that are going to require some factual

17   development including, for instance -- I am just

18   giving the court an example, the $1,000 limit.  We

19   know we are going to need expert testimony.

20           THE COURT:  Right, that's what I had in mind

21   primarily because the McConnell case says that -- I am

22   paraphrasing it, it has to be something that's

23   practical that they can run a campaign on.

24           Well, the United States Senate, that's a heck

25   of a lot different than for councilman for the City of

1  Highland Heights or something like that.

2          And how are you going to address that, I

3  don't know, but you probably need some evidence, maybe

4  expert testimony, I don't know.

5          MS. DENNIS:  I don't think we need it.  It's

6  already been determined constitutional by the Sixth

7  Circuit that KRS 121.1506, I mean, that's just --

8  that's my opinion.

9          THE COURT:  Which one's that?

10          MS. DENNIS:  That's the statute that sets the

11  $1,000 constitution --

12          THE COURT:  I just read a Supreme Court case

13  that upheld that, but that was seven, eight years old.

14          MS. DENNIS:  Right.

15          MR. WIEST:  And that's the issue, Your Honor,

16  when you look at Randall it talks about the effects of

17  inflation over time --

18          THE COURT:  We haven't had any inflation

19  since '08 much.

20          MR. WIEST:  Well, I think it was upheld in I

21  think in 1997.

22          THE COURT:  Well, there was one that was from

23  '08.

24          MR. WIEST:  I think that was Randall, that

25  might have been Randall v. Sorrell that talked

1 about --

2          THE COURT:  It hadn't been -- they just

3 approved it a little bit ago.  Maybe it was McConnell.

4          But there hasn't been much -- that doesn't

5 mean it won't come back tomorrow though, that's what

6 your all -- the evidence should be about.

7          So how do you want to handle it?  You want me

8 to give you a discovery deadline and a deadline for

9 motions for summary judgment, or do you want to set it

10 for trial or what do you want to do?

11          MR. WIEST:  I think, Your Honor, all of the

12 above if we could because, like I said, I think some

13 of these issues are going to get resolved on cross

14 motions for summary judgment, and I think we are going

15 to need a trial, bench trial on the remainder.

16          THE COURT:  Okay, well, let's just set the --

17 how much time do you need for your discovery?

18          MR. WIEST:  I would like to get forty-five to

19 sixty days to wrap that up.  We have not started yet.

20          Obviously I need to get written discovery out

21 to the defendants, and then I think we need to do

22 probably a 30B deposition to each of the --

23          THE COURT:  I usually give six months, but

24 you won't --

25          MS. DENNIS:  Yeah --

1          THE COURT:  -- get it down by the election if

2   I give you six months.

3          MR. WIEST:  That's my -- yeah, that --

4          THE COURT:  So what do you want, ninety days?

5          MR. WIEST:  I think ninety days is fair, Your

6   Honor.

7          THE COURT:  Okay, 90 days for discovery.  I

8   don't know if defense wants to do some discovery, they

9   can do some too; and thirty days after the close of

10  discovery for the plaintiffs to file a motion for

11  summary judgment, thirty days to respond, fifteen days

12  to reply, that's my standard order.

13         MR. WIEST:  And just, Your Honor --

14         THE COURT:  We will see after that if we need

15  to have a trial.

16         MR. WIEST:  And if it's okay with the court,

17  we would like to ask for a compressed response time.

18         Typically it's thirty days on written, I

19  mean, if it's okay, we would like to ask for 21 back

20  and forth days, that way everybody kind of has enough

21  time to work within a compressed schedule.

22         MS. DENNIS:  I -- I want the regular

23  schedule.

24         THE COURT:  I think there are times that --

25  this is complex, I see this as being very complex,

1   much more so than the yard signs.

2         I see campaigning near the polling place, I

3   think this is complex because, as I say, somebody's

4   running for the city council, City of Highland

5   Heights, if you're not from around here, is a

6   population of about 3,000 not counting the people at

7   the university; and so running a campaign there,

8   $1,000 might be plenty.

9         On the other hand, if you are Senator

10  McConnell, it might be -- you want to buy your own

11  commercial or somebody running for the state senate in

12  the middle there someplace.

13         MR. WIEST:  That's right.

14         THE COURT:  So how do you -- how are you

15  going to address that issue?

16         McConnell says it has to be adequate -- the

17  decision in McConnell says it has to be adequate for

18  somebody to run a campaign, but it's so different.

19         MR. WIEST:  It is, Your Honor.

20         THE COURT:  This is the first thing in this

21  area I have had so --

22         MR. WHITE:  It is, and you are going to have,

23  you know, in your state house races, you are going to

24  have the dark money super packs you have got to

25  compete against.

1             You are not probably not dealing with a dark

2 money super pack on a local race, so I think you are

3 exactly right, it's a different issue I think when you

4 get into the state house, state senate, statewide

5 race, U.S. Senate, U.S. Congress.

6             MS. DENNIS:  Your Honor, just to clarify, we

7 don't regulate.

8             MR. WIEST:  Right.

9             MS. DENNIS:  We don't regulate federal

10 candidates, we only regulate state and local

11 candidates.

12             THE COURT:  Different race for the Governor

13 than it is for the state senator, state legislature,

14 but they both have a thousand dollar limit.

15             MS. DENNIS:  Right, right, they have the same

16 limit though, and that's pretty much been determined

17 you need to have all the candidates applied at the

18 same limit.  You can't differentiate a local office

19 from a --

20             THE COURT:  I don't think that's true, but on

21 the other hand, the Governor who -- persons running

22 for Governor have more people contributing than

23 somebody who is running for Congress or even the

24 Senate although people contribute a lot to those.  You

25 say these don't apply to the U.S. Senate?

1          MS. DENNIS:  No, sir, no, sir, those would be

2 federal rules.

3          THE COURT:  Even the state senator.

4          MR. WIEST:  And, Your Honor, Mr. Benson is

5 going to address a lot of those issues with his expert

6 report and what it takes to -- to mount a campaign and

7 not be overly restrictive, so he is -- we are going to

8 address that with the experts.

9          THE COURT:  Okay, so you think you can do it

10 -- if you can't do it within the time allotted, we

11 will give you a reasonable extension.

12          MR. WIEST:  I think we ought to be close,

13 Your Honor.  We may get up against the deadlines for

14 scheduling, but I think we -- we are going to do our

15 best to get there.

16          THE COURT:  Okay, as to the pending motion,

17 I'll overrule it.  I'll deny it, rather, without

18 prejudice to renew it after we get the discovery done

19 and the summary judgment.

20          MS. DENNIS:  Your Honor --

21          THE COURT:  Yes, ma'am.

22          MS. DENNIS:  -- I would submit that you will

23 be able to see what happens in the primary with

24 Senator Schickel's race and be able to tell how much

25 money it takes to allot to have a successful Senate

1 campaign --

2          THE COURT:  Have a what?

3          MS. DENNIS:  -- for state senator.  Senator

4 Schickel, part of his allegations is that he cannot

5 raise enough money to -- to mount a successful

6 campaign.

7          He only has primary election opposition, and

8 his primary election opponent has elected to spend

9 less than $3,000.

10          I think it will be abundantly clear after the

11 primary that the $1,000 limit is sufficient to allow

12 someone to mount a successful Senate campaign.

13          THE COURT:  Well, that's what you have to

14 have evidence on.

15          All depends on if they have got opposition in

16 the primary and opposition in the general election

17 also.

18          MR. WIEST:  And Your Honor, Mr. Benson is

19 going to tell you that it also depends on the

20 seriousness of the opposition, and all those things.

21          THE COURT:  I am sure.

22          MR. WIEST:  And so I think we are going to

23 get into all that with our expert.

24          THE COURT:  Don't be afraid to go to the

25 basics when it comes to the law.

1        I have read a couple of these cases so I have

2   got a feel for it, but I am no expert by a long shot.

3        Anything else?  Okay, well, I enjoy working

4   with you.

5        MR. GATLIN:  Thank you, Your Honor.

6        MS. DENNIS:  Thank you, sir.

7        (The further hearing in this matter was

8   concluded at 1:25 p.m.)

9                        - - -

10                    CERTIFICATE

11        I certify that the foregoing is a correct

12  transcript from the record of proceedings in the

13  above-entitled matter.

14  s/  K. Ann Banta
    K. Ann Banta, RPR, CRR          Date

15

16

17

18

19

20

21

22

23

24

25