## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION AT COVINGTON

SEN. JOHN SCHICKEL, in his personal and
official capacities, et al.,

     Plaintiffs,

v.

CRAIG C. DILGER, in his official capacity
as Chair and Member, Kentucky Registry
of Election Finance, et al.,

     Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:15-cv-0155-WOB-JGW
*Electronically filed*

---

## LEGISLATIVE ETHICS COMMISSION DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF COMBINED DISCOVERY REQUESTS, INCLUDING INTERROGATORIES, REQUESTS FOR ADMISSIONS, AND REQUESTS FOR PRODUCTION OF DOCUMENTS

---

Defendants George C. Troutman, in his official capacity as Chairman and Member, Kentucky Legislative Ethics Commission, Elmer George, Deborah Jo Durr, Ken Winters, Bob Fulkerson, Pat Freibert, Henry Stephens, and Paul D. Gudgel, in their official capacities as Members, Kentucky Legislative Ethics Commission, and H. John Schaaf, in his official capacity as Executive Director, Kentucky Legislative Ethics Commission (collectively, "LEC Defendants") submit their Responses to Plaintiffs' First Set of Combined Discovery Requests, Including Interrogatories, Requests for Admissions, and Requests for Production of Documents:

### GENERAL STATEMENT AND OBJECTIONS

A.  The LEC Defendants object to these discovery requests to the extent that they demand information protected by attorney-client privilege or the attorney work product doctrine.



EXHIBIT

43

PENGAD 800-631-6989

B.  To the extent that any of these discovery requests can be interpreted as requiring the LEC Defendants to identify or produce any documents or set forth any information which is in the possession, custody and control of Plaintiffs or others, that has not been available to or is otherwise not in the possession of the LEC Defendants or is equally accessible to Plaintiffs, the LEC Defendants objects thereto.

C.  The LEC Defendants object to Plaintiffs' discovery requests to the extent that they are overly broad, burdensome and oppressive.

D.  The LEC Defendants object to Plaintiffs' discovery requests to the extent that they seek documents not relevant to the subject matter of this action and not reasonably calculated to lead to discovery of admissible evidence.

E.  The LEC Defendants have not completed discovery, investigation or preparation for trial in this matter.  Accordingly, documents and information are provided without prejudice to the LEC Defendants' right to make further objections and present additional information and documents that are hereafter discovered or that further discovery and investigation may indicate are relevant in this action.

F.  The LEC Defendants reserve all rights to object as to the competency, relevancy, materiality, and admissibility of the information disclosed in response to these discovery requests.

G.  These general objections apply to each of the following responses.  Neither failure to repeat an objection in any response nor listing some objections but not others shall be deemed a waiver of any objection listed above.

## DEFINITION

2

"Commission" or "KLEC" or "LEC" means the Kentucky Legislative Ethics Commission.

## ANSWERS TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSION

1.      Please admit that KLEC is headquartered, operates from, and holds its meetings, at an address in Frankfort, Kentucky, which is located in the federal Eastern District of Kentucky.

**ANSWER:**    Admit.

2.      Please admit that every campaign donation given to a legislator or candidate over $100.00 is required to be reported to KREF.[1]

**ANSWER:**    KLEC administers the Code of Legislative Ethics, which does not include any requirements relating to reporting of campaign contributions, so KLEC is not qualified to interpret the legal requirements for reporting of campaign contributions.  That reporting process is administered by KREF, which is qualified to respond to this Request for Admission. The LEC Defendants have made reasonable inquiries and the information known is insufficient to enable the LEC Defendants to admit or deny.

3.      Please admit that KREF posts on its website via a searchable database available to the public, every campaign donation over $100.00 that a contributor gives to a candidate, which is required to be included on a campaign finance report, and is required to be reported to KREF.

**ANSWER:**    KLEC does not have any role in administering KREF's website or that agency's searchable database, so KLEC is not qualified to respond to this Request for

---

[1] For clarity, KREF stands for the Kentucky Registry of Election Finance.

Admission. The LEC Defendants have made reasonable inquiries and the information known is insufficient to enable the LEC Defendants to admit or deny

4.      Please admit that, pursuant to K.R.S. 6.807, KLEC requires registration statements to be filed with it, both initially and quarterly, by legislative agents (i.e. lobbyists) and their employers, that requires, among other things, the disclosure of legislative actions that a legislative agent will be lobbying on behalf of.

**ANSWER:**    The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants admit that KRS 6.807(1) requires legislative agents and their employers to file initial registration statements with the commission, and KRS 6.807(1)(c) requires the initial registration statements to include the name, bill number, or a brief description of the legislative action for which the legislative agent is or will be engaged in lobbying on behalf of their employer or as a representative. The LEC Defendants admit that KRS 6.807(3)(a) requires each legislative agent and employer to file updated registration statements with the commission on the fifteenth day of January, February, March, April, May, and September of each year, and KRS 6.807(3)(b) requires the updated registrations to confirm the continuing existence of each engagement described in an initial registration statement, and list the specific bills or resolutions on which the agent lobbied under that engagement during the period covered by the updated statement.

5.      Please admit that, pursuant to K.R.S. 6.821, KLEC requires statements of expenditure to be filed with it, both initially and quarterly, by legislative agents (i.e. lobbyists) and their employers, which requires, among other things, the disclosure of financial transactions between members of the General Assembly, the Governor, and a secretary of a cabinet.

**ANSWER:**    The LEC Defendants object to the request on the grounds that it is vague

and ambiguous. Without waiving said objections, the LEC Defendants deny that KRS 6.821 requires legislative agents and their employers to file initial statements of expenditures. The LEC Defendants admit that KRS 6.821(1) requires legislative agents and their employers to file statements of expenditures as part of the updated registration statements required by KRS 6.807(3), but deny that KRS 6.821 requires disclosure of financial transactions.

6.      Please admit that, pursuant to K.R.S. 6.824, KLEC requires registration statements to be filed with it, both initially and quarterly, by legislative agents (i.e. lobbyists), which requires, among other things, the disclosure of financial transactions between members of the General Assembly, the Governor, and a secretary of a cabinet.

**ANSWER:**   The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants deny that KRS 6.824 requires legislative agents and their employers to disclose financial transactions between members of the General Assembly, the Governor, or a secretary of a cabinet on their initial registration statements. The LEC Defendants admit that KRS 6.824 requires disclosure of any financial transaction with or for the benefit of any member of the General Assembly, the Governor, the secretary of a cabinet listed in KRS 12.250, or any member of the staff of those officials as part of the updated registration statements required by KRS 6.807(3).

7.      Please admit that the reports set forth in Requests for Admission Nos. 4, 5, and 6 are public records and available for public inspection, including inspection by the media, pursuant to the provisions of Kentucky's Open Records Act, KRS §§61.870, *et seq*.

**ANSWER:**   The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants admit that the initial and

updated registration reports statements required by KRS 6.807 are public records subject to the application of the Open Records Act, KRS 61.870-884, unless otherwise exempted.

8.   Please admit that K.R.S. 6.811(5) prohibits a legislative agent (i.e. lobbyist) from asking their spouse to donate to any legislator or a candidate for legislature.

**ANSWER:**   The LEC Defendants object to the request on the grounds that it is vague and ambiguous. KRS 6.811(5) provides that "a legislative agent shall not serve as a campaign treasurer, and shall not directly solicit, control, or deliver a campaign contribution, for a candidate or legislator." A spouse of a lobbyist is not prohibited from making a campaign contribution. The phrase "asking their spouse to donate" is vague and ambiguous, and the LEC Defendants can therefore neither admit nor deny the request.

9.   Please admit that, as a hypothetical, K.R.S. 6.811(6) prohibits a legislative agent (i.e. lobbyist) from donating to a legislator's campaign committee for Governor in any amount, even though the legislative agent could donate to their opponent, who is not a legislator.

**ANSWER:**   The LEC Defendants object to the request on the grounds that it is vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, the LEC Defendants admit that KRS 6.811(6) states that "a legislative agent shall not make a campaign contribution to a legislator, a candidate, or his or her campaign committee." In 1995, KLEC opined that KRS 6.811(6) prohibits a legislative agent from making a campaign contribution to a legislator seeking a statewide Constitutional office. The Commission also said the Code of Legislative Ethics does not apply to candidates for statewide office who are not members of the General Assembly.

10.   Please admit that KLEC enforces the provisions of K.R.S. 6.611, K.R.S. 6.731 through 6.767, K.R.S. 6.781 through 6.797, and K.R.S. 6.801 through 6.829.

**ANSWER:**  The LEC Defendants deny that they have the authority to enforce KRS 6.611, as KRS 6.611 provides only definitions for the Kentucky Code of Legislative Ethics. The LEC Defendants admit that they have the authority to enforce the provisions of KRS 6.731-767, 6.781-797, and 6.801-829.

11.  Please admit that KLEC accepts complaints from the public to initiate an investigation that could lead to and enforcement action of the provisions of K.R.S. 6.611, K.R.S. 6.731 through 6.767, K.R.S. 6.781 through 6.797, and K.R.S. 6.801 through 6.829.

**ANSWER:**  The LEC Defendants deny that they accept complaints from the public to initiate an investigation that could lead to an enforcement action of the provisions of KRS 6.611, as KRS 6.611 provides only definitions for the Kentucky Code of Legislative Ethics. The LEC Defendants admit that under KRS 6.686, if a complaint is filed with KLEC alleging a violation of the Code of Legislative Ethics, KLEC serves a copy of the complaint on the person alleged to have committed the violation, and that person may file an answer with KLEC.  After the answer is filed, or the time expires for filing of an answer, KLEC "shall initiate a preliminary inquiry into any alleged violation of the code."  That process may lead to enforcement of the provisions of KRS 6.731-767, 6.781-797, and 6.801-829.

12.  Please admit that K.R.S. 6.811(6) prohibits a legislative agent (i.e. lobbyist) from making a campaign donation in any amount, at any time, to a legislator or a candidate for the legislature.

**ANSWER:**  The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants admit that KRS 6.811(6) states that "a legislative agent shall not make a campaign contribution to a legislator, a candidate, or his or her campaign committee," and that KRS 6.811(6) applies to contributions of money and

7

applies "at any time". The LEC Defendants deny that KRS 6.811(6) prohibits legislative agents from making donations such as time, energy, vocal support, written support, or other non-monetary donations to a campaign, as long as the donations are not reportable campaign contributions.

13.    Please admit that through the enforcement of K.R.S. 6.811(6), a legislative agent (i.e. lobbyist) who desires to follow the law, as it is written, will not make a campaign donation in any amount, at any time, to a legislator or a candidate for the legislature, and as a result these legislators and candidates will not receive such donations.

**ANSWER:**  The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants admit that KRS 6.811(6) states that "a legislative agent shall not make a campaign contribution to a legislator, a candidate, or his or her campaign committee." The LEC Defendants deny that KRS 6.811(6) prohibits legislative agents from making donations such as time, energy, vocal support, written support, or other non-monetary donations to a campaign, as long as the donations are not reportable campaign contributions.

14.    Please admit that a true and accurate copy of 2014 Ky HB 28 is attached hereto as Exhibit A.

**ANSWER:**  Admit.

15.    Please admit that there was no evidence of any scandals or corruption in Kentucky from 2000 through 2014, that led to the passage of 2014 Ky HB 28.

**ANSWER:**  The LEC Defendants object to the request on the grounds that it is vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The use of the phrase "no evidence of any scandals or corruption in Kentucky from 2000 through

2014" is vague and ambiguous, and the LEC Defendants therefore deny that there was no evidence of any scandals or corruption in Kentucky from 2000 through 2014. There are ethics issues regarding legislators and other public officials which regularly arise in Kentucky, in other state legislatures, and in the U.S. Congress, and those issues can be part of the motivation for individual legislators, groups of legislators, and entire legislative bodies to consider ethics legislation.

16.     Please admit that under the provisions of K.R.S. Chapter 6, Senator Schickel is forbidden from attending a Christmas party hosted by a legislative agent (i.e. lobbyist) where entertainment is provided (i.e. a band).

**ANSWER:** Deny. Sen. Schickel may attend a Christmas party hosted by a legislative agent.

17.     Please admit that under the provisions of K.R.S. Chapter 6, and specifically K.R.S. 6.751(2), Senator Schickel is forbidden from attending a Christmas party hosted by and at the home of a legislative agent (i.e. lobbyist) and consuming a cocktail shrimp and a can of soda at the event.

**ANSWER:** The LEC Defendants object to the request on the grounds that it is vague and ambiguous. If Sen. Schickel attends a Christmas party hosted by and at the home of a legislative agent, his ability to consume "a (free) cocktail shrimp and a (free) can of soda" depends on factors including who is invited to the event, who's sponsoring the event, who's paying for the cocktail shrimp and soda (if Sen. Schickel chooses not to pay for his own food and beverages), and whether Sen. Schickel has approval to attend the event. The LEC Defendants can therefore neither admit nor deny the request.

9

18.     Please admit that under the provisions of K.R.S. Chapter 6, and specifically K.R.S. 6.751(2), Senator Schickel is forbidden from attending a Christmas party hosted by and at the home of a legislative agent (i.e. lobbyist) and consuming two cocktail shrimp and a can of soda at the event.

**ANSWER:** The LEC Defendants incorporate their answer to Request for Admission #17 above.

19.     Please admit that under the provisions of K.R.S. Chapter 6, and specifically K.R.S. 6.751(2), Senator Schickel is forbidden from accepting a cup of coffee from a legislative agent (i.e. lobbyist) while meeting with the legislative agent in the Capitol's cafeteria to discuss an issue.

**ANSWER:** The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Sen. Schickel's ability to accept a (free) cup of coffee from a lobbyist depends on factors including who is invited to the event, who is sponsoring the event, who is paying for the coffee (if Sen. Schickel chooses not to pay for his own coffee), and whether Sen. Schickel has approval to attend. The LEC Defendants can therefore neither admit nor deny the request.

20.     Please admit that prior to the enactment of 2014 Ky HB 28, Senator Schickel could have lawfully attended a Christmas party hosted by and at the home of a legislative agent (i.e. lobbyist), and consumed two cocktail shrimp and a can of soda at the event.

**ANSWER:** Admit. The LEC Defendants further incorporate their answers to Requests for Admission #17 and #18 above.

21.     Please admit that prior to the enactment of 2014 Ky HB 28, Senator Schickel could have lawfully accepted a cup of coffee from a legislative agent (i.e. lobbyist) while meeting with the legislative agent in the Capitol's cafeteria to discuss an issue.

10

**ANSWER:**  Admit. The LEC Defendants further incorporate their answer to Request for Admission #19.

22.     Please admit that, in relation to Request for Admission Nos. 19 and 20, Senator Schickel or the legislative agent (i.e. lobbyist) in question would have had to report the expenditure or food or drink in question to the KLEC at the time (i.e. prior to the enactment of 2014 Ky HB 28).

**ANSWER:**  The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants admit, as it relates to Requests for Admission Nos. 20 and 21 (not Nos. 19 and 20), that prior to and after the effective date of 2014 HB 28, lobbyists who purchase food or beverages for legislators are required to report those expenditures. A lobbyist was and is required to report the expenditure on food or beverages on the lobbyist's next statement of expenditures, but the information reported depends on factors including who was invited to the event, who sponsored the event, who paid for the food or beverages (if Sen. Schickel chose not to pay for his own food or beverages), and whether Sen. Schickel was approved to attend. The LEC Defendants deny that the Code of Legislative Ethics has ever required any legislator to report any expenditure by any person on the "food or drink in question."

23.     Please admit that, during a session of the Kentucky General Assembly, and as a consequence of 2014 Ky HB 28, employers of legislative agents can no longer donate to the campaign of a legislator or a candidate for legislature.

**ANSWER:**  The LEC Defendants object to the request on the grounds that it is vague and ambiguous. Without waiving said objections, the LEC Defendants admit, to the extent that a business or organization that is incorporated is prohibited by the Kentucky Constitution and

11

campaign finance statutes from making, at any time, a campaign contribution to a candidate. As a consequence of the enactment of KRS 6.811(7), during a regular session of the General Assembly, a business or organization which employs a legislative agent shall not make a campaign contribution to a legislator or a legislative candidate, regardless of whether the business or organization is incorporated.

24.     Please admit that, if Senator Schickel should accept a donation from a legislative agent, or accept two shrimp and a glass of soda at a Christmas party hosted by a legislative agent, and KLEC receives a complaint and evidence substantiating these activities, KLEC will take enforcement action against Senator Schickel.

**ANSWER:**  The LEC Defendants object to the request on the grounds that it is vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Regarding accepting a donation from a legislative agent, the phrase "donation" is vague and ambiguous, and the LEC Defendants incorporate their response to Request for Admission No. 12 above. Regarding two shrimp and a glass of soda at a Christmas party hosted by a legislative agent, there are many circumstances under which Sen. Schickel could accept two shrimp and a glass of soda at a Christmas party hosted by a legislative agent (even if he chose not to pay for his own shrimp and soda). The LEC Defendants can therefore neither admit nor deny the request.

25.     Please admit that KLEC refers violations of the legislative ethics code, contained in K.R.S. Chapter 6 for criminal prosecution where it finds such action warranted.

**ANSWER:**  The LEC Defendants admit the request in part and deny the request in part. The LEC Defendants admit that KRS 6.691(6) states: "the commission may refer to the Attorney General, county attorney, or Commonwealth's attorney of the appropriate jurisdiction, for prosecution evidence of criminal violations of this code. The LEC Defendants deny that KLEC

refers violations of the legislative ethics code for criminal prosecution because the Commission has not done so since its inception.

27.    Please admit that each of the KLEC Defendants are residents of the Commonwealth of Kentucky, and at least one of them resides in the counties that comprise the Eastern District of Kentucky.

**ANSWER:** Admit.

28.    Please admit that K.R.S. 6.801 acknowledges that, "[t]he operation of open and responsible government requires the fullest opportunity to be afforded to the people to petition their government for the redress of grievances and to express freely their opinions on executive and legislative action."

**ANSWER:**   The LEC Defendants admit that KRS 6.801(1) provides that "the operation of open and responsible government requires the fullest opportunity to be afforded to the people to petition their government for the redress of grievances and to express freely their opinions on executive and legislative action." The LEC Defendants further state that KRS 6.801(2) provides that "the identity and expenditures of certain persons who attempt to influence executive and legislative actions should be publicly identified and regulated to preserve and maintain the integrity of government."

29.    Please admit that K.R.S. 6.811(4) and 6.751(2), insofar as they prohibit the receipt or giving of anything of value, to the extent it includes *de minimis* items such as food or drink, prohibit what was otherwise customary and usual interactions between people and create inhibitions on legislators interacting with lobbyists as they would other residents of the Commonwealth of Kentucky.

**ANSWER:** The LEC Defendants object to the request on the grounds that it is vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The phrase "otherwise customary and usual interactions between people and create inhibitions on legislators interacting with lobbyists as they would other residents of the Commonwealth of Kentucky" is vague and ambiguous, and the LEC Defendants therefore can neither admit nor deny the request.

## RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

1.     Identify each Person who provided information for responding to these interrogatories, requests for admissions, and requests for production of documents, and for each person identify the interrogatories, requests for admissions, or requests for production of documents for which such Person provided information or documents.

**ANSWER:** John Schaaf, Executive Director of the Commission, and Kara Daniel, General Counsel for the Commission, participated in the responses to these discovery requests.

2.     Identify all Persons with knowledge of any of the allegations contained in Plaintiffs' Complaint, or with knowledge of any of the defenses alleged in your answer.

**ANSWER:** The LEC Defendants, including John Schaaf, Kara Daniel, and the Commission's former Executive Director, Anthony M. Wilhoit.

3.     Identify all persons from whom you have taken formal or informal statements concerning this case, including but not limited to written, oral or tape recorded statements, including the name, address and telephone number of each such person and the date(s) on which the statements were taken.

**ANSWER:** The LEC Defendants are not aware of any such statements.

14

4.      Identify each person you expect to call as a lay (fact) witness at the trial of this matter and state the subject on which each lay witness is expected to testify.

**ANSWER:**   The LEC Defendants object to this interrogatory on the grounds that it is premature, as the LEC Defendants have not identified their fact witnesses for trial at this time. Without waiving said objection, the LEC Defendants expect to call John Schaaf, Executive Director of the Commission to testify as to the provisions of the Kentucky Code of Legislative Ethics challenged by Plaintiffs.   The LEC Defendants reserve the right to supplement this response up to and until any deadlines for disclosure of witnesses.

5.      Identify all Experts that you intend to call as an expert witness at the trial of this action, and for each such Expert, state:  (A) the Expert's qualifications, with particular reference to the issues upon which he/she may be called to testify; (B) the subject matter of the expected testimony, together with the substance of the facts and observations on which he/she is expected to testify; (C) the opinions or conclusions to be expressed in the expected testimony, together with a summary of the grounds for each opinion or conclusion; (D) whether the Expert has provided any written or recorded report; and (E) identify all documents that have been submitted to or reviewed by each expert in connection with his/her evaluation of any issues in this case or the formulation of his/her opinions or conclusions.

**ANSWER:** The LEC Defendants object to this interrogatory on the grounds that it is premature, as the LEC Defendants have not identified any expert witnesses for trial at this time. The LEC Defendants reserve the right to supplement this response up to and until any deadlines for disclosure of expert witnesses.

15

6.     Identify every current or former employee of any of the Defendants or any other Person with whom you have communicated regarding the Complaint, the allegations contained in the Complaint, your Answer, or the matters or defenses contained in your Answer.

**ANSWER:**  The LEC Defendants incorporate their response to Interrogatory #1 above, and further state that when the Complaint was filed, the Complaint erroneously named LEC's former executive director, Anthony M. Wilhoit, and he is aware of the Complaint.

7.     Identify every document or other material that you intend to introduce as an exhibit at the trial of this matter, any hearing in this case, or during the deposition of any witness in this action.

**ANSWER:**  The LEC Defendants object to this request on the grounds that it is premature. Without waiving said objection, the LEC Defendants state that the material which will be introduced as exhibits at the trial of this matter, any hearing in this case, or during the deposition of any witness in this action, includes but is not limited to the material described or included in these Responses To Plaintiffs' First Set of Interrogatories and the Responses to Plaintiffs' First Requests for Production of Documents below, and any documents or other exhibits produced by Plaintiffs in response to any discovery requests by any party. The LEC Defendants reserve the right to supplement this response up to and until any deadlines for disclosure of exhibits.

8.     For each denial of any allegation in Plaintiffs' Complaint, state the grounds or basis of such denial, and any witnesses that support any such denial.

**ANSWER:**  The LEC Defendants incorporate their Answer to Plaintiffs' Complaint. Witnesses supporting the denials in the LEC Defendants' Answers include, but are not limited to, John Schaaf, Executive Director of the Legislative Ethics Commission.

16

9.      State the facts and the basis for each affirmative defense raised in your Answer.

**ANSWER:**  The facts and basis for the LEC Defendants' First Defense of lack of subject matter jurisdiction are that Plaintiffs have not alleged an injury in fact, as Plaintiffs have not taken any action that would subject them to enforcement of the challenged provisions, or established a credible threat of enforcement. Plaintiffs' claims are also not ripe for the same reasons.

The facts and basis for the LEC Defendants' Second Defense that Plaintiffs fail to state a claim under 42 U.S.C. § 1983 and U.S. CONST. amends. I and XIV are that the provisions challenged by Plaintiffs are constitutional.

The facts and basis for LEC Defendants' Third Defense of sovereign and/or governmental immunity are that Plaintiffs have not taken any actions resulting in the waiver of sovereign and/or governmental immunity by the LEC Defendants.

The facts and basis for LEC Defendants' Fourth Defense[2] that Plaintiffs' claims to attorney fees are barred because their underlying federal claims are barred, are that Plaintiffs' claims to attorney fees are barred because their underlying federal claims are barred as stated in the LEC Defendants' other defenses.

The facts and basis for LEC Defendants' Fifth Defense[3] that Plaintiffs' fail to state a claim under FED. R. CIV. P. 12(b)(c) are that the provisions challenged by Plaintiffs are constitutional, and Plaintiffs' claims therefore fail as a matter of law.

---

[2] The LEC Defendants erroneously labeled this Defense as their "Fifth Defense" in their Answer, when it should have been listed as their Fourth Defense.
[3] The LEC Defendants erroneously labeled this Defense as their "Sixth Defense" in their Answer, when it should have been listed as their Fifth Defense.

17

10.    Unless your answers to each of the foregoing Requests for Admissions were an unqualified "admit," then please state all facts that support, tend to support, refute, or tend to refute each of your denials or qualified admissions of any of the Requests for Admissions.

**ANSWER:**  The LEC Defendants incorporate their Responses to Plaintiffs' First Set of Requests for Admissions above.

11.    Identify every communication, including by date, the speakers, the person(s) involved, and the substance and subject matter, whereby KLEC, or any of its employees, attorneys, or members, communicated in any way with any member of the Kentucky Legislative Research Commission, any Kentucky legislator, or their respective staffs (including attorneys) concerning the Complaint in this matter, the substance and/or subject matter of this lawsuit, including, without limitation, 2014 HB 28.

**ANSWER:**  In response to Plaintiffs' First Set of Requests for Production, specifically Requests #8-16, LEC Defendants are producing copies of information, including LEC's newsletters distributed monthly to legislators, and which include communications which may relate to substance and/or subject matter of this lawsuit, including, without limitation, the amendments to the Code of Legislative Ethics included in 2014 HB 28.

The LEC Defendants are producing copies of the outlines for LEC's mandatory ethics training sessions which have been presented to all members of the General Assembly each year since 2009.

The LEC Defendants are producing copies of the recommendations for legislative ethics changes submitted to the General Assembly by the LEC Defendants in 2005, 2007, 2009, 2010, 2011, 2012, and 2013.

18

The LEC Defendants testified before the Interim Joint Committee on State Government on September 28, 2011 regarding the recommendations submitted to the General Assembly by the LEC Defendants.  See: http://www.lrc.ky.gov/minutes/st_gov/110928OK.HTM

The LEC Defendants testified before the Interim Joint Committee on State Government on October 24, 2012 regarding the recommendations submitted to the General Assembly by the LEC Defendants.  See: http://www.lrc.ky.gov/minutes/st_gov/121024OK.HTM

John Schaaf attended the February 27, 2014 meeting of the House of Representatives State Government Committee, and explained his understanding of 2014 HB 28.

John Schaaf attended the March 28, 2014 meeting of the Senate State Government Committee, and explained his understanding of 2014 HB 28.

During the 2014 General Assembly, John Schaaf explained his understanding of 2014 HB 28 to State Representative Brent Yonts, State Senator Damon Thayer, and Joanna Decker of the Legislative Research Commission staff.

In August, 2015, immediately after the filing of the Complaint in this matter, Sen. Schickel phoned LEC Defendant Schaaf and characterized this litigation as "nothing personal", stating that he has "always appreciated" the responsiveness of the LEC Defendants.

The LEC Defendants will supplement this response if further communications which are responsive to this Interrogatory are discovered or recalled.

12.    Identify each incident or example of corruption (or its appearance), including any examples of bribes or gifts, including the date of the incident or example, the parties involved (including their employers and industries), the place(s) the incident(s) or example occurred, and the nature and specifics of the example or incident, that led to the passage of 2014 HB 28.

19

**ANSWER:**  In response to Plaintiffs' First Set of Requests for Production, specifically Requests #8-16, LEC Defendants are producing copies of information, including newsletters distributed monthly to legislators, and which include communications which may relate to substance and/or subject matter of this lawsuit, including, without limitation, the amendments to the Code of Legislative Ethics included in 2014 HB 28. The LEC Defendants are also producing copies of the outlines for LEC's mandatory ethics training sessions which have been presented to all members of the General Assembly each year since 2009.

13.   Identify and state the specific details of Operation BOPTROT, cited in the KLEC Defendants' Motion to Dismiss, including: (i) the date(s), (ii) the parties involved, (iii) the violations of law, (iv) the employers of the parties involved, (v) any particular industries involved in the scandal, (vi) the amount(s) and items involved in any gift(s) or bribe(s), (vii) whether the items involved lawful campaign donations which were publicly disclosed, and (viii) whether or not the activities underlying operation BOPTROT were already illegal under state or federal law.

**ANSWER:**   The LEC Defendants object to the request on the grounds that the information requested in this Interrogatory is equally accessible to the Plaintiffs from numerous sources in the public domain. Without waiving said objection information about Operation BOPTROT is provided, including but not limited to the following: Contemporaneous media coverage, including this 1993 article from the New York Times:

http://www.nytimes.com/1993/09/19/us/with-leaders-leaving-office-for-jail-kentucky-works-to-refurbish-image.html

More requested information is included in this 1993 article from the Los Angeles Times:

http://articles.latimes.com/1993-04-13/news/mn-22398_1_harness-racing-industry

More requested information is in this overview:

20

https://en.wikipedia.org/wiki/Operation_Boptrot

An overview of BOPTROT is included in this 1994 article from the New Yorker magazine:

http://www.newyorker.com/magazine/1994/05/09/doing-the-boptrot

A chapter in the book "It Happened in Kentucky (2nd Edition), By Mimi O'Malley, is devoted to BOPTROT:

https://books.google.com/books?id=VQfvTMObViIC&pg=PA132&lpg=PA132&dq=%22BOPtr
ot%22&source=bl&ots=CBkZX5rDgw&sig=9h7U6BJpKD2iT8vmu8DB01fBmKc&hl=en&sa=
X&ved=0ahUKEwj-7-
bwua_LAhXlk4MKHQ7pA80Q6AEIPDAF#v=onepage&q=%22BOPtrot%22&f=false

Details of BOPTROT are included in several cases involving Kentucky legislators and others, and are found in these decisions of the United States Court of Appeals for the Sixth Circuit:

http://law.justia.com/cases/federal/appellate-courts/F3/33/685/513531/

https://casetext.com/case/us-v-lemaster-2

http://caselaw.findlaw.com/us-6th-circuit/1057704.html

https://casetext.com/case/us-v-wilkinson-25

A 2008 story in the Glasgow Daily Times recounts the BOPTROT memories of former Sen. and Kentucky Supreme Court Justice Walter Baker, as well as the lasting implications of a scandal of the magnitude of BOPTROT:

http://www.glasgowdailytimes.com/news/local_news/boptrot-recall/article_11913f19-e035-
5d8a-9d14-12ef0fcc92d1.html

14.   Identify every example of food and *de minimis* gifts, from 2000 through 2014, that led to corruption or its appearance, which led to, or supports, 2014 HB 28.

**ANSWER:**  The LEC Defendants object to this Interrogatory on the grounds that it is vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The phrase "food and *de minimis* gifts" is not used in the Code of Legislative Ethics, is

21

vague, ambiguous, and subjective, and the LEC Defendants can therefore either admit or deny the request.  Without waiving this objection, the LEC Defendants submit that more than $259.5 million was spent in Kentucky on lobbying and lobbying-related activities from 1993 through 2015. Of the $259.5 million, over $31 million was spent on lobbying and lobbying-related expenditures, including the following which were given to legislators:  food, beverages, promotional items of less than $50, certificates, plaques, or commemorative tokens of less than $150 value, educational items, and informational items, and also including the cost of attendance or participation, and food and beverages consumed at a wide variety of events sponsored by lobbyists and their employers, and to which legislators were invited.

The LEC Defendants submit that the specific records of the more than $259.5 in lobbying and lobbying-related spending from 1993 to the present date will be made available for review and copying by any person, including the Plaintiffs and their counsel, at the office of the Kentucky Legislative Ethics Commission, 22 Mill Creek Park, Frankfort, Kentucky 40601-9230.

15.    Identify every example (including the name of the parties involved, the dates, the nature of the gift, and how such items contribute to corruption to corruption or its appearance) of food and *de minimis* gifts, from 2000 through 2014, which was previously lawful, that led to corruption or its appearance, which led to, or supports, 2014 HB 28.

**ANSWER:** The LEC Defendants incorporate their response to Interrogatory #14.

16.    Identify every example of any corruption or its appearance, that would justify a ban on otherwise lawful and publicly disclosed campaign contributions by employers of lobbyists, including: (i) the date(s), (ii) the parties involved, (iii) the violations of law, if any, (iv) the employers of the parties involved, (v) any particular industries involved in the example, (vi)

the amount(s) and items involved in any gift(s) or bribe(s), and (vii) whether the items involved

lawful campaign donations which were publicly disclosed.

**ANSWER:** The LEC Defendants object to the request on the grounds that it is vague,

ambiguous, and subjective, and not reasonably calculated to lead to the discovery of admissible

evidence. The phrase "any corruption or its appearance" is vague and ambiguous, and the LEC

Defendants can therefore neither admit nor deny the request. Without waiving this objection, the

LEC Defendants submit that there are a wide array of examples ethical and legal violations on

the part of state legislators in Kentucky and in many other states, and examples of ethical and

legal violations on the part of state legislators' federal counterparts who serve and have served as

legislators in the U.S. Congress during the past 20 years.

The LEC Defendants are submitting copies of the LEC's monthly newsletters from 2009

to the present date. The newsletters include stories about the Kentucky General Assembly, about

other state legislatures around the nation, and about the U.S. Congress. The stories focus on the

variety of ways in which many state and federal legislators have engaged in activities which one

or more of the Plaintiffs or some other observer might characterize as "corrupt" or giving the

"appearance" of corruption.

17.    Unless your answers to each of the foregoing Requests for Admissions were an

unqualified "admit," then please state all facts that support, tend to support, refute, or tend to

refute each of your denials or qualified admissions of any of the Requests for Admissions.

**ANSWER:** The LEC Defendants incorporate their response to Interrogatory #10 above.

## **VERIFICATION**

I, _John Schaaf_ , swear that the answers I have given to the above

Interrogatories are true.

_John Schaaf_
Name (print)

_J Schaaf_
Name (signature)

Sworn to before me and subscribed in my presence by _John Schaaf_ on

this _11th_ day of _March_ , 201_6_.

_Yvette Van Hoose_
Notary Public

My commission expires: _June 20 2019_

## RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

1.      Produce all documents used, reviewed, identified, or otherwise relied upon in answering Plaintiffs' Interrogatories served contemporaneously herewith.

**RESPONSE:**  Responsive documents are produced.

2.      Produce all documents used, reviewed, identified, or otherwise relied upon in answering Plaintiffs' Request for Admissions served contemporaneously herewith.

**RESPONSE:**  Responsive documents are produced.

3.      Produce all documents used, reviewed, referred to, or otherwise relied upon in preparing your Answer in this action, or related in any way to the allegations in the Complaint.

**RESPONSE:**  Responsive documents are produced.

4.      Produce all documents that constitute, evidence, tend to evidence, support, refute, tend to refute, refer to, or relate in any way to the claims made in the Complaint or your Answer or defenses raised thereto.

**RESPONSE:**  Responsive documents are produced.

5.      Produce every document or communication made between KREF, its employees, agents, or attorneys, and KLEC, its employees, agents, or attorneys, in any way related to the above captioned lawsuit.

**RESPONSE:**  The LEC Defendants object to the request on the grounds that it seeks documents which are protected by the attorney-client privilege, common interest privilege, and attorney work-product privilege. A privilege log for all privileged communications between KREF and KLEC will be provided by Friday, Mar. 18, 2016.

6.      Produce a copy of any joint Defense Agreement by and between the Defendants in this matter.

**RESPONSE:**  The LEC Defendants object to the request on the grounds that the term "joint Defense Agreement" is vague and ambiguous. Without waiving said objection, a common interest agreement between the LEC Defendants and the Kentucky Registry of Election Finance Defendants is produced.

7.     Please produce any Expert's report, *curriculum vitae*, fee agreement, and all Documents, writings, and correspondence relied upon and used by such Expert in formulating such report or opinions held in this case, including any Documents and correspondence provided by you or your agent, Representative, or Person under your direction to such Expert.  The Documents sought include Experts retained as to issues against Defendant.

**RESPONSE:**  The LEC Defendants object to the request on the grounds that it is premature, as the LEC Defendants have not identified any expert witnesses at this point. The LEC Defendants reserve the right to supplement this response up to and until any deadlines for expert disclosure.

8.     Produce every document whereby KLEC, or any of its employees, attorneys, or members, communicated in any way with any member of the Kentucky Legislative Research Commission, any Kentucky legislator, or their respective staffs (including attorneys) concerning the Complaint in this matter, the substance and/or subject matter of this lawsuit, including, without limitation, 2014 HB 28.

**RESPONSE:**  Responsive documents are produced.

9.     Produce every document that in any way supports, tends to support, or relates to the prohibition on legislative agent (i.e. lobbyist) donations to a campaign of a legislator or candidate for legislature, prohibited under K.R.S. 6.811(6) and 6.767(1), and/or their constitutionality; more particularly, produce every document that refers to or supports to any

notion that such a limit is necessary or appropriate to avoid any corruption or its appearance, or that specifically relates to any such analysis.

**RESPONSE:**  Responsive documents are produced.

10.     Produce every document that in any way supports, tends to support, or relates to the prohibition on employers of legislative agents (i.e. lobbyist) donations to a campaign of a legislator or candidate for legislature, prohibited under K.R.S. 6.811(7) and 6.767(2), and/or their constitutionality; more particularly, produce every document that refers to or supports to any notion that such a limit is necessary or appropriate to avoid any corruption or its appearance, or that specifically relates to any such analysis.

**RESPONSE:**  Responsive documents are produced.

11.     Produce every document that in any way supports, tends to support, or relates to the prohibition on legislative agent (i.e. lobbyist) *de minimis*[4] gifts of food, prohibited under K.R.S. 6.811(4) and 6.751(2), and/or their constitutionality; more particularly, produce every document that refers to or supports to any notion that such a limit is necessary or appropriate to avoid any corruption or its appearance, or that specifically relates to any such analysis.

**RESPONSE:**  Responsive documents include, but are not limited to the following articles relating to a "no cup of coffee" rule and other ethics-related proposals, and Kentucky's efforts in regard to those proposals.

http://www.ncsl.org/research/ethics/the-gift.aspx

http://www.kentucky.com/2011/09/12/1878522_gubernatorial-candidates-approval.html?rh=1

http://watchdog.org/141411/gift-reform-pennsylvania/

http://sunlightfoundation.com/press/articles/2010/10/20/caught-tape-lobbyists-golf-party-lawmakers/

---

[4] For purposes of these discovery requests, the *de minimis* exception constitutes less than $100 annually.

27

http://mycn2.com/politics/ethics-commission-calls-for-groups-to-disclose-money-spent-on-legislative-related-ads

http://www.kentuckynewera.com/opinion/editorials/article_be3e95a4-ffb7-11e2-a8e1-0019bb2963f4.html

http://www.bgdailynews.com/news/changes-possible-in-frankfort/article_213bc03e-810e-5d40-a528-d6e7612546e5.html

http://www.bgdailynews.com/opinion/our_opinion/legislative-ethics-could-use-a-facelift-during-this-session/article_e1a1c334-8156-5ab1-987e-47732ba44618.html

http://wuky.org/post/ky-house-committee-oks-ethics-update-no-cup-coffee-rule

12.    Produce every document that in any way supports, tends to support, or relates to the prohibition on legislative agent (i.e. lobbyist) serving as a campaign treasurer, or soliciting, controlling, or delivering a campaign contribution to a legislator or candidate for legislature, as prohibited under K.R.S. 6.811(5), and/or its constitutionality; more particularly, produce every document that refers to or supports to any notion that such a limit is necessary or appropriate to avoid any corruption or its appearance, or that specifically relates to any such analysis.

**RESPONSE:**  Responsive documents are produced.

13.    To the extent not otherwise produced, produce each document that in any way relates or refers to the Complaint, your Answer, or the subject matter of this lawsuit.

**RESPONSE:**  Responsive documents include, but are not limited to the following bills introduced in prior legislative sessions, going back to 2006, and each of which included one or more provisions similar to the language of 2014 HB 28:

http://www.lrc.ky.gov/record/12rs/HB151.htm

http://www.lrc.ky.gov/record/12rs/SB67.htm

http://www.lrc.ky.gov/record/11rs/SB53.htm

http://www.lrc.ky.gov/record/08rs/HB212.htm

http://www.lrc.ky.gov/record/06rs/HB396.htm

14.     Please produce copies of all files and other Document compilations that relate or pertain to any Plaintiffs.

**RESPONSE:** Responsive documents are produced.

15.     Please produce copies of all files of each and every enforcement action or complaint, including warning letters, admonitions, complaints, or other enforcement taken by Defendants, or KLEC, against any legislator or legislative candidate, from 2006 to the present.

**RESPONSE:** The LEC Defendants object to the request on the grounds that it is vague and ambiguous, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection,  responsive documents will be made available for review and copying by any person, including the Plaintiffs and their counsel, at the office of the Kentucky Legislative Ethics Commission, 22 Mill Creek Park, Frankfort, Kentucky 40601-9230.

16.     Unless your answers to each of the foregoing Requests for Admissions were an unqualified "admit," then please produce copies of all Documents that support, tend to support, refute, or tend to refute each of your denials or qualified admissions of any of the Requests for Admissions.

**RESPONSE:** Responsive documents are produced.

17.     To the extent not otherwise produced, produce each document that in any way relates or refers to the Complaint, your Answer, or the subject matter of this lawsuit.

**RESPONSE:** Responsive documents are produced.

Respectfully submitted,

Matt James
Assistant Attorney General
Office of the Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Fax:     (502) 564-2894
Email: matt.james@ky.gov

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served by electronic and U.S. mail, this 11th day of March, 2016, to:

Christopher Wiest
Paul Darpel
Chris Wiest, AAL, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Robert A. Winter, Jr.
P.O. Box 175883
Fort Mitchell, KY 41017-5883
robertawinterjr@gmail.com

Jack S. Gatlin
Thomas B. Bruns
Freund, Freeze & Arnold
Chamber Office Park
2400 Chamber Center Drive, Ste 200
Ft. Mitchell, KY 41017
jgatlin@ffalaw.com

Emily Dennis, General Counsel
Kentucky Registry of Election Finance
140 Walnut St.
Frankfort, KY 40601
emily.dennis@ky.gov

Matt James