## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| SEN. JOHN SCHICKEL, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15-cv-00155-WOB-JGW |
| | ) | |
| CRAIG C. DILGER, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## NON-PARTY DEMOCRATIC HOUSE AND SENATE
## CAUCUSES' CAMPAIGN COMMITTEES' RESPONSE TO PLAINTIFFS'
## OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER
## QUASHING SUBPOENAS SERVED UPON THE CAUCUSES

Plaintiffs are a sitting Republican State Senator and Libertarian candidates for office. They seek information related to the political strategies, management, and operation of the non-party House and Senate Democratic Caucus Campaign Committees (the "Democratic Caucuses" or "Caucuses"). The requests are politically motivated, seek irrelevant information, seek information that is publicly available, and would impose an undue burden if enforced. The Caucuses submit the following Response to the Plaintiffs' Objections to the Magistrate Judge's Order granting the Caucuses' Motion to Quash.[1] For all those reasons included in the Caucuses' previous briefing on the issue (Doc. Nos. 32, 33, 40), and the reasons stated herein, the Court should overrule the Plaintiffs' objections to the Magistrate's Opinion and affirm the Magistrate Judge's April 22 Order.

---

[1] In light of this district's rule that a prevailing party does not have the right to respond to a non-prevailing party's objections to a Magistrate Judge's non-dispositive ruling, *see* LR 72.2, the Caucuses did initially refrain from responding. On June 7, however, the Court established a briefing schedule directing the Democratic Caucuses to respond and set the matter for hearing. (Doc. No. 48).

## I.   <u>BACKGROUND</u>

Plaintiffs charge that a number of Kentucky's campaign finance and lobbying statutes are unconstitutional on First and Fourteenth Amendment grounds.  (Doc. No. 1, ¶¶ 29-77).  To this end, the Plaintiffs have asked the Court to (1) declare the statutes unconstitutional, (2) enjoin the enforcement of the statutes, and (3) award Plaintiffs their costs and attorney fees.  (*Id*., ¶ 84).

Of particular import here is Plaintiff David Watson's challenge to KRS § 121.150(11), which governs contributions to executive committees and caucus campaign committees.[2] That statute reads:

> No person shall contribute more than two thousand five hundred dollars ($2,500) to the state executive committee of a political party and its subdivisions and affiliates in any one (1) year. No person shall contribute more than two thousand five hundred dollars ($2,500) to a caucus campaign committee in any one (1) year.  Contributions a person makes to any executive committee other than the state executive committee in excess of one thousand dollars ($1,000) in any one (1) year shall be deposited in a separate account which the state executive committee maintains for the exclusive purpose of paying administrative costs incurred by the political party.

KRS § 121.150(11).  Plaintiffs' specific challenge at issue here relates to contributions to caucus campaign committees, of which there are four in Kentucky: (1) the House Democratic Caucus Campaign Committee, (2) the House Republican Caucus Campaign Committee, (3) the Senate Democratic Caucus Campaign Committee, and (4) the Senate Republican Campaign Committee. *See* KRS § 121.015(3)(b).

Using this constitutional challenge as a justification, Plaintiffs served all four of the aforementioned Caucuses with subpoenas seeking a broad array of documents and testimony

---

[2]  Of the three Plaintiffs, only David Watson, a 2016 candidate for Kentucky's 6th House District, challenges the constitutionality of KRS § 121.150(11).  (Doc. No. 1, ¶¶ 3, 30, and footnote no. 5).

relating to the respective caucuses' management, finances and political strategies.  (*See e.g.*, Doc. 32-2 & 32-3.)  The House and Senate Democratic Caucus Campaign Committees moved to quash the subpoenas.  In the briefing that followed, it became clear that Plaintiffs were more intent on using the subpoenas as political weapons than for the investigative purpose for which they are designed.  Examples of this politicization are numerous.  First, Plaintiffs repeatedly speculate that Tim Longmeyer, a former Beshear administration official who pled guilty to bribery charges "was involved with helping to obtain donations to the House, and possibly the Senate, Democratic Caucus Committees."  (*Id.*, p. 8).  They even affixed copies of Longmeyer's contribution records. (Doc. No. 42-2).  Longmeyer is not relevant to this suit, which purports to challenge the inequities in campaign finance laws applications between major political parties and third parties.  Second, Plaintiffs repeatedly refer to sexual harassment allegations against Representative Will Coursey. (Doc. No. 1, ¶ 19; Doc. No. 38, p. 3).  Again, not relevant.  Third, Plaintiffs revealed that they "anticipate the possibility of damning admissions" in response to questions posed about this lawsuit, or "admissions or other damning statements made by the caucus committees or their leadership that go to the heart of the case."  (Doc. No. 38, p. 13).  These low-blow political attacks shed light on the Plaintiffs' true motivations.

On April 22, 2016, Magistrate Judge Wehrman issued a Memorandum Order quashing the subpoenas.  (Doc. No. 43).  Judge Wehrman found the requests sought information that is irrelevant, and publicly available.  As a result, he concluded that compliance with the subpoenas would impose an undue burden on the non-party caucuses and granted the motions to quash. Plaintiffs timely objected to select portions of the Magistrate Judge's ruling.  (Doc. No. 44). Notwithstanding Plaintiffs' concession that they "are not objecting to the [Magistrate Judge's] entire decision," their objections are still far reaching.  (Doc. No. 44, p. 1).  With regard to the

document subpoena, Plaintiffs object to the Magistrate Judge's decision to quash Requests 1, 2, 3,

and 6, namely:

1. A copy of each set of bylaws, rules, regulations, procedures, constitutions, any amendments thereto, or other documents that govern the operation of the caucus campaign committee, from its inception to date;

2. A copy of any other document, record, minutes, or tangible thing that relates to the governance or organization of the caucus campaign committee, from its inception to date;

3. A copy of each set of reports or records that governs or relates to the fundraising or the solicitation of funds for the caucus campaign committee from January 1, 2006 to date;

6. A copy of any document that reflects or references expenditures for the caucus campaign committee from January 1, 2006, to date, including the date, name of the candidate(s) or race, amount spent, and what such funds were spent on…

(Doc. No. 32-2, *Document Subpoena*, p. 4).  Plaintiffs further object to the Magistrate's decision

to quash Requests 1, 2, 3, 4, and 7 from their testimonial subpoena, *viz.*:

1. The operations of the caucus campaign committee, including (a) how the chairman and other officers are selected; (b) how, where, and how much the caucus campaign committee chooses to fund particular projects or races; (c) how the caucus campaign committee raises funds; (d) how and in what manner the caucus campaign committee is directed or controlled by the legislative leadership for the particular caucus in question in the Kentucky General Assembly; (e) how caucus leadership enforces party discipline through the caucus campaign committee; or (f) general governance or operations of the caucus campaign committee [;]

2. How much needs, on average, to be raised or spent to fund a contested race for the particular house in question, and how such feeds need to be spent;

3. Testimony that in any ways relates to documents produced in connection with the subpoena *duces tecum* issued in this manner [*sic*] to the particular caucus campaign committee, including any topics raised by or referred to, in documents produced;

4. The fundraising, [or] solicitation of funds for the caucus campaign committee from January 1, 2006 to date;

7. The nature, purpose, and means of expenditures by the caucus campaign committee from January 1, 2006 to date, including the date, name of the candidate(s) or race, amount spent, and what such funds were spent on, and the purpose of such expenditures, including why the particular expenditures were made in the particular races, versus spending in other races;…

(Doc. No. 32-3, *Testimonial Subpoena*, p. 4).  Importantly, Plaintiffs have acknowledged that the aforementioned requests are overly broad in terms of the time period they covered, and have agreed to limit the temporal scope of their requests to information collected between January 1, 2010 and the present.[3]  (Doc. No. 44, p. 2).

## II.   APPLICABLE LEGAL STANDARDS

### A.  A Magistrate Judge's Order on a Non-Dispositive Matter May Only Be Modified if Clearly Erroneous or Contrary to Law.

Review under Rule 72(a) mandates "considerable deference to the determinations of magistrates." *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (*quoting 7 Moore's Federal Practice* ¶ 72.03 [7.–3]).  According to the Rule, a district court may only "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a).  This standard was recently elaborated on by Judge Van Tatenhove:

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw." *Heights Community Congress v. Hilltop Realty, Inc*., 774 F.2d 135, 140 (6th Cir. 1985). Instead, the Court considers whether there is

---

[3]  Plaintiffs fail to acknowledge that the Magistrate Judge actually limited the temporal scope of the subpoenas even further:  "The Court thus will grant the motions to quash both the documentary and testimonial subpoenas to the extent each seeks information prior to 2011 on both overbreadth and relevancy grounds." (Doc. No. 43, p. 9).  Plaintiffs have not objected to this holding, thereby waiving their arguments on this point.  *See Henson v. Warden, London Corr. Inst.*, 620 F. App'x 417, 420 (6th Cir. 2015).

evidence in the record to support the initial court's finding and whether "its construction of that evidence is a reasonable one." *Id.*

*Nash-Finch Co. & Super Food Servs., Inc. v. Casey's Foods, Inc.*, No. 6:15-CV-00086-GFVT, 2016 WL 737903, at *2 (E.D. Ky. Feb. 23, 2016).  Furthermore, the objecting party must provide specific objections to those portions of the Magistrate's Order it disputes.  Where a party fails to provide specific objections, but only provides general, broad sweeping objections, then it waives its right to appeal those issues.  *Henson v. Warden, London Corr. Inst.*, 620 F. App'x 417, 420 (6th Cir. 2015); *Cowherd v. Million,* 380 F.3d 909, 912 (6th Cir. 2004); *Howard v. Secretary of HHS,* 923 F.2d 505, 508-09 (6th Cir. 1991).


### B. Courts Are To Be Particularly Sensitive that Subpoenas Issued To Non-Parties Do Not Impose an Undue Burden.

The Court should quash or modify a subpoena when it subjects the recipient to an undue burden.  Fed. R. Civ. P. 45(d)(1), (3)(A)(i) and (iv).  The party seeking discovery bears the initial burden of "prov[ing] that the information sought is relevant and is being sought for good cause." *Brown Jordan Int'l, Inc. v. Carmicle*, 2015 WL 6142885, at *2 (W.D. Ky. Oct. 19, 2015) (citing *Bariteau v. Krane*, 206 F.R.D. 129, 130 (W.D. Ky. 2001)).  "If the moving party meets its burden, 'the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure.'" *Id.* (*quoting Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007)).

A subpoena creates an undue burden where, as here, it demands information or documents that are irrelevant to the case at hand or contains requests that are overly broad.  *See Jackson v. Gogel*, 2015 WL 3452546, *2 (E.D. Ky. May 29, 2015).  The party seeking documents from a

non-party must further "demonstrate good cause to justify production." *Perez v. Off Duty Police Servs., Inc.*, 2015 WL 2089962, *1 (W.D. Ky. May 4, 2015) (quashing a subpoena that sought irrelevant evidence).  Assuming that "the documents sought by the subpoena are 'relevant and are sought for good cause,' then the subpoena should be enforced 'unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.'" *Bariteau*, 206 F.R.D. at 130 (*quoting Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 997 (10th Cir. 1965)). Furthermore, as the Magistrate Judge explained in his order, "[i]f the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden."  (Doc. No. 43, p. 7 (*quoting Gray v. Town of Easton*, No. 3:12CV166 RNC, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013)).

"Where, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013) (quotations omitted). *See also Perez*, 2015 WL 2089962, at *2 ("Courts proceed cautiously in enforcing a subpoena when information is being sought from a non-party.") (*quoting Anderson v. Old Nat'l Bancorp,* 2010 WL 5463397, at * 2 (W.D.Ky. Dec. 29, 2010)).

## III.   ARGUMENT

### A. The Magistrate Judge's Decision to Quash Plaintiffs' Subpoenas Was Not Clearly Erroneous.

The Magistrate Judge found that the information sought by the Plaintiffs was both irrelevant to their suit and, in many cases, publicly available.  The Magistrate's conclusions were

well-founded and are certainly not clearly erroneous.  Accordingly, the Caucuses ask that the Court overrule the Plaintiffs' objections.

### i. Plaintiffs Are Seeking More Information From the Democrats Than Was Provided By The Republican Caucuses

Plaintiffs repeatedly refer to the fact that the Republican Caucuses provided a declaration in lieu of contesting the subpoenas and suggest that the Democratic Caucuses are unreasonable for not following suit.  The fact that the Republicans cooperated is not surprising since one of the Plaintiffs is a sitting Republican State Senator.  Perhaps Mr. Schickel's status also explains why the Plaintiffs are seeking much more from the Democrats by means of subpoena than was required of the Republicans in their declaration.  An examination of the Republicans' declaration proves this point.

The declaration provided by Ms. Bell includes fourteen paragraphs.  Paragraphs 1 and 2 provide information about the declaration's author.  Paragraph 3 points out the obvious:  Caucus Campaign Committee leadership is selected by the Republican Caucus.  Paragraphs 4 through 8 simply restate the statutory framework governing the Caucus Committee structure and the maximum donations allowed by statute.  *Compare* Doc. No. 42-1 with KRS §§ 121.015, 121.150 and 121.180.  Paragraphs 9 through 12 provide information about how the Republican Caucus has spent its money in 2010, 2011, 2012, and 2014.  Paragraphs 13 and 14 reveal, quite unsurprisingly, that the Senate Republican Caucus Campaign Committee exists to elect Republicans to the Senate. (*See* Doc. No. 42-1.)

What is problematic is not what is contained in the Republicans' declaration, but that the scope is much narrower than that of the subpoenas Plaintiffs seek to enforce against the Democratic

Caucuses.  Noticeably absent from the Republican declaration is any information about how the Republican Caucus solicits funds from donors, fundraises, use the system to "enforce party discipline," or how much needs to be raised to fund a specific race.  Yet Plaintiffs demand responses on these topics, in addition to other irrelevant information, from the Democratic Caucuses.  (*See* Doc. No. 32-2 and 32-3).  Nothing has changed in the litigation to alter Plaintiffs' position.  Plaintiffs even reiterated the importance of some of these pieces of information in their objections.  (*See* Doc. No. 44, p. 4 ("…we are interested in fundraising invitations and similar materials that demonstrate the purpose of the committee…")).  If solicitation and fundraising information is so important, then the Republicans should have been required to address this in their declaration or else turn the requested information over to the Plaintiffs.  The Magistrate Judge even commented on this disparity between the information sought by subpoena and the information included in the declaration in his Order.  (*See* Doc. No. 43, FN 4 ("Plaintiffs' lack of need for such information and the extremely low relevancy (at most) of that information is again highlighted by the fact that this was not discussed in the Senate Republican caucus' declaration.")

The disparity between what Republicans were permitted to disclose, and what is being requested of the Democratic Caucuses confirms that Plaintiffs are more interested in carrying out a political fishing expedition than the constitutional issues they purport to care so much about.

### ii.  All of the Information Contained in the Republicans' Declaration is Publicly Available.

If Plaintiffs only really "need" the information contained in the Republican declaration, then the subpoenas issued upon the Democratic Caucuses should be quashed because every piece of information contained in the Republican declaration is publicly available.  As the Magistrate

Judge noted, where "the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden." *Gray v. Town of Easton*, No. 3:12CV166 RNC, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013). Plaintiffs have conceded that some of what was contained in the Republican declaration "is publicly available…" (Doc. No. 42, p. 1). Perhaps Plaintiffs are unaware, but much more is publicly available than Plaintiffs let on. A quick examination of the Republican's declaration proves the point.

In Paragraph 3, the Republicans point out that Caucus Campaign Committee leadership is selected by the Republican Caucus. These facts are already in the record. As John Schaff, the Executive Director of the Kentucky Legislative Ethics Commission, testified to, each respective Caucus Campaign Committees is controlled by that parties' respective caucus. (Doc. No. 47-2, p. 18). The Magistrate Judge recognized that the "website for the Kentucky Registry of Election Finance shows the names of the leadership of the caucuses." (Doc. No. 43, pp. 7-8). This information remains available today.[4]

The Magistrate's point was validated by the unsurprising response that Plaintiffs received from the Republican Caucuses' Leadership: the Republican leadership in the House and Senate control the respective caucuses. (Doc. No. 44, p. 3). Plaintiffs "anticipate the answer is the same for the Democrats." (*Id.*) Plaintiffs' insistence that they do not know "who is really in control" is belied by the publicly available Finance Reports identifying the Caucuses' leadership. The question has already been answered.

---

[4] *See* "List of Caucus Campaign Committees," available at: http://kref.ky.gov/Caucus%20Campaign%20Committee/Current%20Caucus%20Campaign%20Committee%20List%20(.pdf%208kb).pdf (last visited June 17.)

Paragraphs 4 through 8 address the Caucus Campaign Committee structure. Each piece of information from these paragraphs is taken straight from the Kentucky Revised Statutes as evidenced by the Republicans' repeated citations to KRS §§ 121.015, 121.150 and 121.180. The Plaintiffs conveyed the same information, and cited to the same statutes, in their complaint. *See* Doc. No. 1, ¶¶ 29-31.

Paragraphs 9 through 12 provide information about how much money the Republican Caucus Campaign Committee has raised and spent in 2010, 2011, 2012, and 2014 respectively. Such contribution information is public record, and accessible online. In their objections, Plaintiffs concede that the "total amount that these caucus committees spend each election cycle" is available online, but wrongly suggest that "KREF's website does not reveal how much of these funds are spent in individual or competitive races…" (Doc. No. 44, p. 5). This is not true.

In Kentucky, the Legislature has explicitly stated that "[t]he intent of disclosure of campaign finance information is to make that information about the role of money in politics accessible to the public…" KRS § 121.005. To that end, the Kentucky Registry of Election Finance ("KREF") has been charged with making campaign finance information accessible to the masses. *See* KRS § 121.120. Anyone can access this information using KREF's Contributor Search tool.[5]

Take for example, the information that Ms. Bell's declaration provided about the total amount of money that the Senate Republican Caucus Campaign Committee spent on five Republican Senate races in 2012. (Doc. No. 42-1, p. 2). As shown below, a search using KREF's contribution system produced nearly identical results to that disclosed by the Republican Caucus.

---

[5]  The Kentucky Registry of Election Finance's search tool is accessible at http://www.kref.state.ky.us/krefsearch/ (last visited June 17.)

| Top Five Senate Races, in terms of Expenditures, for the Senate Republican Campaign Committee in 2012 | | | |
|---|---|---|---|
| Candidate | Expenditure Reported in Republican Declaration | Expenditure Reported on KREF Website | Difference in Reporting |
| Stan Humphries | $64,422.65 | $63,422.65 | $1,000.00 |
| Whitney Westerfield | $37,401.18 | $37,401.18 | $0.00 |
| Albert Robinson | $46,789.32 | $46,789.32 | $0.00 |
| Chris McDaniel | $13,000 | $13,000 | $0.00 |
| Chris Theineman | $104,885.08 | $104,885.08 | $0.00 |
| **TOTAL** | **$266,498.23** | **$265,498.23** | **$1,000.00** |

Screen shots of the search run in KREF's system, and the results, are attached as **Exhibit A**. Importantly, this information is not just available for Republican candidates. Plaintiffs may search and recover the same information about the Democratic Caucuses' expenditures.

With regard to the aforementioned expenditure data, there was only one discrepancy between Ms. Bell's declaration and the KREF reporting system. Ms. Bell reported an additional $1,000 was given to Stan Humphries in the 2012 election cycle. As KREF has no record of such a $1,000 contribution, Ms. Bell either was mistaken in her declaration, or the Republican Caucus misreported the contribution. Either way, this $1,000 discrepancy over the course of an entire year is not so significant as to justify burdening a non-party with collecting the information for Plaintiffs.

KREF's system is not difficult to operate. The Magistrate Judge provided a brief primer on how to use the tool in his Opinion, *see* Doc. No. 43, p. 7, FN 6, and the Caucuses provide an explanation of how to run the searches here.[6] Plaintiffs have all of the financial expenditures

---

[6] To recover the information presented above, go to KREF's contribution search tool and search "Contributor Searches" directed "To All Recipients." Search the "Senate Republican Ca," limit the dates from January 1, 2012 through December 31, 2012, and select "CAUCUS CAMP COMM" from the Contributor Type.

coming in and out of the Caucuses' accounts at their fingertips.  All they have to do is search, and cull the data.  There is absolutely nothing stopping the Plaintiffs from spending a couple hours on the internet and collecting the same information with regard to the Democratic Caucuses. Certainly it is not too much to ask the Plaintiffs, who chose to prosecute this action in the first place, to do their own research.

Paragraphs 13 and 14 of Ms. Bell's declaration state that the Republican Caucus Campaign Committee exists "to elect, or re-elect Republicans, and members of their caucus, to the Kentucky Senate."  (Doc. No. 42-1, p. 3.)  This should come as no surprise in light of the fact that this purpose is laid out in the very definition of what it is to be a Caucus campaign committee:

> "Caucus campaign committee," which means members of one (1) of the following caucus groups who receive contributions and make expenditures to support or oppose one (1) or more specific candidates or slates of candidates for nomination or election, or a committee:  1. House Democratic caucus campaign committee; 2. House Republican caucus campaign committee; 3. Senate Democratic caucus campaign committee; and 4. Senate Republican caucus campaign committee;

*See* Doc. 1, ¶ 30 (citing KRS § 121.015(3)(b)).  Again, Plaintiffs anticipate the answer is the same for the Caucuses, but insist on proceeding with subpoenas.

The material that Plaintiffs really need to prosecute their action was contained in the Republican declaration.  As has been demonstrated, that information is publicly available.  "If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden."  *Gray,* 2013 WL 2358599, at *3.  Accordingly, the Court should overrule the objections, and advise the Plaintiffs to do their own investigation rather than burden the non-party Caucuses with the task.

### iii.   <u>The Information Sought in Document Requests 1, 2, 3, and Testimony Requests 1 and 4 is Irrelevant.</u>

Plaintiffs specifically object to the Magistrate Judge's finding that the requests for copies of Bylaws, Rules, Regulations, Procedures, Documents, Records, Minutes, other Tangible Things Relating to the Governance of the Democratic Caucus Campaign Committees and reports or records relating to the fundraising or solicitation of funds need not be disclosed.  (Doc. No. 44, pp 3-5).  They further object to the fact that the Caucuses were not required to provide testimony about the aforementioned subjects.  *Id*.

Plaintiffs suggest these documents, and the related testimony, would address: "how these committees operate, who actually controls them, and what their purpose is."  (Doc. No. 44, p. 3).  This is an overly simplistic and deceptive generalization.  Notwithstanding that fact that Plaintiffs' questions may be answered with information that is publicly available, the information Plaintiffs seek is irrelevant.

Plaintiffs maintain that the information they seek will demonstrate that the caucus committees are controlled by the elected legislative leadership, and shed light on how they operate.  According to Plaintiffs, this is important because it "demonstrates that KRS 121.150 'magnifies the…advantages of incumbency and thereby insulat[e] legislators from effective electoral challenge.'"  (Doc. No. 44, p. 4 (*quoting Randall v. Sorrell*, 548 U.S. 230, 248 (2006)).  Plaintiffs have failed to meet their burden to demonstrate that the evidence they seek is relevant, much less that the Magistrate Judge was clearly erroneous in determining that the information they sought was not relevant.

First, the type of information Plaintiffs seek is not necessary to prosecute its case.  Nothing in *Randall* suggests otherwise.  The information that the Plaintiff's expert relied on in *Randall* was

the type of financial information which is publicly available on KREF's website. The *Randall* Court referred to the petitioners' expert's "race-by-race analysis" which demonstrated that:

> Vermont political parties (particularly the Republican Party) "target" their contributions to candidates in competitive races, that those contributions represent a significant amount of total candidate funding in such races, and that the contribution limits will cut the parties' contributions to competitive races dramatically.

*Id*., p. 254. Plaintiffs' expert does not need internal governance documents from the Caucuses to perform the same analysis. Rather, all he would need is access to the KREF website which is available to anyone willing to expend minimal time and energy to figure it out.

Second, as the Caucuses argued in their underlying briefing, the questions posed by the Plaintiffs are not "critical" questions. They need not be answered to resolve Plaintiffs' facial challenge against KRS § 121.150(11). (*See* Doc. No. 40, pp. 4-10). To the contrary, the information and documents that Plaintiffs seek have no tendency to make the constitutionality of KRS § 121.150(11) (or any of the other statutes being challenged by Plaintiffs) more or less probable and are of no consequence in resolving Plaintiffs' constitutional claims. Such evidence is therefore irrelevant and inadmissible. *See* Fed. R. Evid. 401 and 402.

Third, the additional information that Plaintiffs seek will not lead to the production of relevant evidence that is reasonably calculated to lead to the discovery of admissible evidence. How a Caucus chooses to govern itself has no impact on whether the statute which authorizes the existence of that Caucus is constitutional.

### B. **The Magistrate's Decision to Quash Document Request 6 and Testimony Requests 2 and 7 is Not Clearly Erroneous.**

Plaintiffs also object to the Magistrate's decision to quash the subpoena as it relates to Plaintiffs' requests for documents and testimony about the Committee's expenditures, particularly

the amounts of money spent on contested races.  (Doc. No. 44, p. 5-6).  In arguing that the documents are relevant, they direct the Court to the expert's opinion provided in *Randall*.  As discussed *supra*, the expert in that case examined the amount political parties spent on House and Senate races in 1998 in Vermont.  Admittedly, the expenditure information was critical to that expert being able to offer his opinion.  Plaintiffs contend that "[i]n quashing this request, the Magistrate Judge apparently concluded that none of this matters."  (Doc. No. 44, p. 6).  Plaintiffs could not be any more mistaken.

The Magistrate Judge did not find that this information was not important, but that the information sought through these requests was available online.  (Doc. No. 43, p. 7-8).  He noted that the Plaintiffs' need for this information was "rendered even more suspect by the fact that plaintiffs recite some of the movants' financial information in their response to the motion to quash."  (*Id.*, p. 8).  As the Magistrate Judge explained in his order, "[i]f the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden."  (Doc. No. 43, p. 7 (*quoting Gray*, 2013 WL 2358599, at *3.

Plaintiffs' stubbornly maintain that the financial information related to how much is spent in each of the contested senate races is unavailable online.  As demonstrated, *supra section III.A.ii*, they are mistaken.  The entirety of this information is available to a party who knows how to navigate KREF's website.

To the extent that Plaintiffs seek testimony relating to the Caucuses political strategies or past expenditures they should not be permitted to take it.  The Plaintiffs are free to review the information which is publicly available but should not be permitted to elicit testimony related to

the Caucuses political strategies.  Furthermore, testimony about past expenditures is unnecessary. The expenditures (which are available online) speak for themselves.


## IV.   <u>CONCLUSION</u>

The non-party House and Senate Democratic Caucus Campaign Committees did not choose to involve themselves in this litigation.  Plaintiffs should not have brought suit if they were not prepared to expend the time and energy to investigate their own case.  The Caucuses should not be required to perform the heavy lifting for them.  The Magistrate Judge correctly found that the entirety of the information they sought was either irrelevant or publicly available.  Even if the Court disagrees with his findings, it cannot be said that they are clearly erroneous.  *See Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985) ("The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.")  Accordingly, the Plaintiffs' objections to the Magistrate Judge's Order quashing Plaintiffs' subpoenas should be denied.


Respectfully submitted,

/s/ Christopher B. Markus
Patrick R. Hughes (KY Bar #85493)
Christopher B. Markus (KY Bar #92613)
William H. Brammell, Jr. (KY Bar #93766)
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881
phughes@dbllaw.com

cmarkus@dbllaw.com

*Attorneys for the House and Senate Democratic Caucus Campaign Committees*

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion was filed on this 17th day of June, 2016, using the Court's CM/ECF System which will in turn cause electronic service on all counsel of record registered for such service.

/s/ Christopher B. Markus__
Christopher B. Markus

543886v2