# EXHIBIT H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION (Covington)

*ELECTRONICALLY FILED*

JOHN SCHICKEL, Kentucky State Senator, et al.                    **PLAINTIFFS**

v.                                                CIVIL ACTION NO. 2:15-CV-155

CRAIG C. DILGER, Chairman, Kentucky
Registry of Election Finance, in his official capacity; et al.       **DEFENDANTS**

#### AFFIDAVIT OF EMILY DENNIS

I, Emily Dennis, hereby depose and state as follows:

1.     I am the General Counsel of the Kentucky Registry of Election Finance (Registry). I represent the Defendants in the above-referenced matter, and am not a party to this action.

2.     Attached as Exhibit 1 hereto is a true and accurate copy of KRS 121.015: Definitions for chapter. (KRS Chapter 121 – Campaign Finance Regulation).

3.     Attached as Exhibit 2 hereto is a true and accurate copy of KRS 121.150: Campaign contribution and loan restrictions and expenditure limitations.

4.     Attached as Exhibit 3 hereto is a true and accurate copy of Registry Advisory Opinion 2014-005.

Signed under the penalties of perjury this 25th day of July, 2016.

*Emily Dennis*

Emily Dennis, General Counsel
Kentucky Registry of Election Finance



Exhibit H

Commonwealth of Kentucky
County of Franklin, SCT.

Subscribed and sworn to before me by Emily Dennis on this 25th day of July, 2016.

Notary Public, KY State at Large (# 517582 )

My commission expires: 08·18·2018 .

2

## INDEX OF EXHIBITS

**Exhibit 1**:    KRS 121.015: Definitions for chapter.

**Exhibit 2**:    KRS 121.150: Campaign contribution and loan restrictions and expenditure limitations.

**Exhibit 3**:  .  Advisory Opinion 2014-005 (In re:   Receipt of Primary Election Contributions by Libertarian Party Candidates)

EXHIBIT 1

**121.015  Definitions for chapter.**

As used in this chapter:

(1)  "Registry" means the Kentucky Registry of Election Finance;

(2)  "Election" means any primary, regular, or special election to fill vacancies regardless of whether a candidate or slate of candidates is opposed or unopposed in an election. Each primary, regular, or special election shall be considered a separate election;

(3)  "Committee" includes the following:

(a)  "Campaign committee," which means one (1) or more persons who receive contributions and make expenditures to support or oppose one (1) or more specific candidates or slates of candidates for nomination or election to any state, county, city, or district office, but does not include an entity established solely by a candidate which is managed solely by a candidate and a campaign treasurer and whose name is generic in nature, such as "Friends of (the candidate)," and does not reflect that other persons have structured themselves as a committee, designated officers of the committee, and assigned responsibilities and duties to each officer with the purpose of managing a campaign to support or oppose a candidate in an election;

(b)  "Caucus campaign committee," which means members of one (1) of the following caucus groups who receive contributions and make expenditures to support or oppose one (1) or more specific candidates or slates of candidates for nomination or election, or a committee:

1.  House Democratic caucus campaign committee;

2.  House Republican caucus campaign committee;

3.  Senate Democratic caucus campaign committee; and

4.  Senate Republican caucus campaign committee;

(c)  "Political issues committee," which means three (3) or more persons joining together to advocate or oppose a constitutional amendment or public question which appears on the ballot if that committee receives or expends money in excess of one thousand dollars ($1,000);

(d)  "Permanent committee," which means a group of individuals, including an association, committee or organization, other than a campaign committee, political issues committee, inaugural committee, caucus campaign committee, or party executive committee, which is established as, or intended to be, a permanent organization having as a primary purpose expressly advocating the election or defeat of one (1) or more clearly identified candidates, slates of candidates, or political parties, which functions on a regular basis throughout the year;

(e)  An executive committee of a political party; and

(f)  "Inaugural committee," which means one (1) or more persons who receive contributions and make expenditures in support of inauguration activities for any candidate or slate of candidates elected to any state, county, city, or

district office;

(4)   "Contributing organization" means a group which merely contributes to candidates, slates of candidates, campaign committees, caucus campaign committees, or executive committees from time to time from funds derived solely from within the group, and which does not solicit or receive funds from sources outside the group itself. However, any contributions made by the groups in excess of one hundred dollars ($100) shall be reported to the registry;

(5)   "Testimonial affair" means an affair held in honor of a person who holds or who is or was a candidate for nomination or election to a political office in this state designed to raise funds for any purpose not charitable, religious, or educational;

(6)   "Contribution" means any:

(a)   Payment, distribution, loan, deposit, or gift of money or other thing of value, to a candidate, his agent, a slate of candidates, its authorized agent, a committee, or contributing organization. As used in this subsection, "loan" shall include a guarantee, endorsement, or other form of security where the risk of nonpayment rests with the surety, guarantor, or endorser, as well as with a committee, contributing organization, candidate, slate of candidates, or other primary obligor. No person shall become liable as surety, endorser, or guarantor for any sum in any one (1) election which, when combined with all other contributions the individual makes to a candidate, his agent, a slate of candidates, its agent, a committee, or a contributing organization, exceeds the contribution limits provided in KRS 121.150;

(b)   Payment by any person other than the candidate, his authorized treasurer, a slate of candidates, its authorized treasurer, a committee, or a contributing organization, of compensation for the personal services of another person which are rendered to a candidate, slate of candidates, committee, or contributing organization, or for inauguration activities;

(c)   Goods, advertising, or services with a value of more than one hundred dollars ($100) in the aggregate in any one (1) election which are furnished to a candidate, slate of candidates, committee, or contributing organization or for inauguration activities without charge, or at a rate which is less than the rate normally charged for the goods or services; or

(d)   Payment by any person other than a candidate, his authorized treasurer, a slate of candidates, its authorized treasurer, a committee, or contributing organization for any goods or services with a value of more than one hundred dollars ($100) in the aggregate in any one (1) election which are utilized by a candidate, slate of candidates, committee, or contributing organization, or for inauguration activities;

(7)   Notwithstanding the foregoing meanings of "contribution," the word shall not be construed to include:

(a)   Services provided without compensation by individuals volunteering a portion or all of their time on behalf of a candidate, a slate of candidates, committee, or contributing organization;

(b)   A loan of money by any financial institution doing business in Kentucky made in accordance with applicable banking laws and regulations and in the ordinary course of business; or

(c)   An independent expenditure by any individual or permanent committee;

(8)   "Candidate" means any person who has received contributions or made expenditures, has appointed a campaign treasurer, or has given his consent for any other person to receive contributions or make expenditures with a view to bringing about his nomination or election to public office, except federal office;

(9)   "Slate of candidates" means any two (2) persons who have filed a joint notification and declaration pursuant to KRS 118.127, received contributions or made expenditures, appointed a campaign treasurer, designated a campaign depository, or given their consent for any other person to receive contributions or make expenditures with a view to bringing about their nomination for election to the offices of Governor and Lieutenant Governor. Unless the context requires otherwise, any provision of law that applies to a candidate shall also apply to a slate of candidates;

(10)  "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or should have been aware that his conduct is of that nature or that the circumstance exists;

(11)  "Fundraiser" means an individual who directly solicits and secures contributions on behalf of a candidate or slate of candidates for a statewide-elected state office or an office in a jurisdiction with a population in excess of two hundred thousand (200,000) residents;

(12)  "Independent expenditure" means the expenditure of money or other things of value for a communication which expressly advocates the election or defeat of a clearly identified candidate or slate of candidates, and which is made without any coordination, consultation, or cooperation with any candidate, slate of candidates, campaign committee, or any authorized person acting on behalf of any of them, and which is not made in concert with, or at the request or suggestion of any candidate, slate of candidates, campaign committee, or any authorized person acting on behalf of any of them;

(13)  "Electronic reporting" means the use of technology, having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities, by which an individual or other entity submits, compiles, or transmits campaign finance reports to the registry, or by which the registry receives, stores, analyzes, or discloses the reports;

(14)  "Security procedure" means a procedure employed for the purpose of verifying that an electronic signature, record, or performance is that of a specific person or for detecting changes or errors in the information in an electronic record. The term includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures;

(15)  "Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the

intent to sign the record;

(16)  "Filer" means any candidate, a slate of candidates, committee, or other individual or entity required to submit financial disclosure reports to the registry; and

(17)  "Filer-side software" means software provided to or used by the filer that enables transmittal of financial reports to the registry.

**Effective:** July 15, 2008

**History:**   Amended 2008 Ky. Acts ch. 129, sec. 10, effective July 15, 2008. -- Amended 2005 Ky. Acts ch. 105, sec. 2, effective March 16, 2005. -- Amended 2000 Ky. Acts ch. 398. sec. 2, effective July 14, 2000. -- Amended 1996 Ky. Acts ch. 153, sec. 4, effective July 15, 1996; and ch. 179, sec. 1, effective July 15, 1996. -- Amended 1994 Ky. Acts ch. 458, sec. 1, effective July 15, 1994. â€" Amended 1992 Ky. Acts ch. 288, sec. 15, effective July 14, 1992. -- Amended 1986 Ky. Acts ch. 100, sec. 1, effective July 15, 1986. -- Amended 1980 Ky. Acts ch. 292, sec. 1, effective July 15, 1980. -- Created 1974 Ky. Acts ch. 130, sec. 178.

EXHIBIT 2

**121.150  Campaign contribution and loan restrictions and expenditure limitations.**

(1)  No contribution shall be made or received, directly or indirectly, other than an independent expenditure, to support inauguration activities or to support or defeat a candidate, slate of candidates, constitutional amendment, or public question which will appear on the ballot in an election, except through the duly appointed campaign manager, or campaign treasurer of the candidate, slate of candidates, or registered committee. Any person making an independent expenditure, shall report these expenditures when the expenditures by that person exceed five hundred dollars ($500) in the aggregate in any one (1) election, on a form provided or using a format approved by the registry and shall sign a statement on the form, under penalty of perjury, that the expenditure was an actual independent expenditure and that there was no prior communication with the campaign on whose behalf it was made.

(2)  Except as provided in KRS 121.180(10), the solicitation from and contributions by campaign committees, caucus campaign committees, political issues committees, permanent committees, and party executive committees to any religious, charitable, civic, eleemosynary, or other causes or organizations established primarily for the public good is expressly prohibited; except that it shall not be construed as a violation of this section for a candidate or a slate of candidates to contribute to religious, civic, or charitable groups.

(3)  No candidate, slate of candidates, committee, or contributing organization, nor anyone acting on their behalf, shall accept any anonymous contribution in excess of fifty dollars ($50), and all anonymous contributions in excess of fifty dollars ($50) shall be returned to the donor, if the donor can be determined. If no donor is found, the contribution shall escheat to the state. No candidate, slate of candidates, committee, or contributing organization, nor anyone acting on their behalf shall accept anonymous contributions in excess of one thousand dollars ($1,000) in the aggregate in any one (1) election. Anonymous contributions in excess of one thousand dollars ($1,000) in the aggregate which are received in any one (1) election shall escheat to the state.

(4)  No candidate, slate of candidates, committee, or contributing organization, nor anyone on their behalf, shall accept a cash contribution in excess of fifty dollars ($50) in the aggregate from each contributor in any one (1) election. No candidate, slate of candidates, committee, or contributing organization, nor anyone on their behalf, shall accept a cashier's check or money order in excess of the maximum cash contribution limit unless the instrument clearly identifies both the payor and the payee. A contribution made by cashier's check or money order which identifies both the payor and payee shall be treated as a contribution made by check for purposes of the contribution limits contained in this section. No person shall make a cash contribution in excess of fifty dollars ($50) in the aggregate in any one (1) election to a candidate, slate of candidates, committee, or contributing organization, nor anyone on their behalf.

(5)  No candidate, slate of candidates, committee, contributing organization, nor anyone on their behalf, shall accept any contribution in excess of one hundred dollars ($100) from any person who shall not become eighteen (18) years of age on or

before the day of the next general election.

(6)   No candidate, slate of candidates, campaign committee, political issues committee, nor anyone acting on their behalf, shall accept a contribution of more than one thousand dollars ($1,000) from any person, permanent committee, or contributing organization in any one (1) election. No person, permanent committee, or contributing organization shall contribute more than one thousand dollars ($1,000) to any one (1) candidate, campaign committee, political issues committee, nor anyone acting on their behalf, in any one (1) election.

(7)   Permanent committees or contributing organizations affiliated by bylaw structure or by registration, as determined by the Registry of Election Finance, shall be considered as one (1) committee for purposes of applying the contribution limits of subsection (6) of this section.

(8)   No permanent committee shall contribute funds to another permanent committee for the purpose of circumventing contribution limits of subsection (6) of this section.

(9)   No person shall contribute funds to a permanent committee, political issues committee, or contributing organization for the purpose of circumventing the contribution limits of subsection (6) of this section.

(10)  No person shall contribute more than one thousand five hundred dollars ($1,500) to all permanent committees and contributing organizations in any one (1) year.

(11)  No person shall contribute more than two thousand five hundred dollars ($2,500) to the state executive committee of a political party and its subdivisions and affiliates in any one (1) year. No person shall contribute more than two thousand five hundred dollars ($2,500) to a caucus campaign committee in any one (1) year. Contributions a person makes to any executive committee other than the state executive committee in excess of one thousand dollars ($1,000) in any one (1) year shall be deposited in a separate account which the state executive committee maintains for the exclusive purpose of paying administrative costs incurred by the political party.

(12)  No person shall make a payment, distribution, loan, advance, deposit, or gift of money to another person to contribute to a candidate, a slate of candidates, committee, contributing organization, or anyone on their behalf. No candidate, slate of candidates, committee, contributing organization, nor anyone on their behalf shall accept a contribution made by one (1) person who has received a payment, distribution, loan, advance, deposit, or gift of money from another person to contribute to a candidate, a slate of candidates, committee, contributing organization, or anyone on their behalf.

(13)  No candidates running as a slate for the offices of Governor and Lieutenant Governor shall make combined total personal loans to their committee in excess of fifty thousand dollars ($50,000) in any one (1) election. No candidate for any other statewide elected state office shall lend to his committee any amount in excess of twenty-five thousand dollars ($25,000) in any one (1) election. In campaigning for all other offices, no candidate shall lend to his committee more than ten thousand dollars ($10,000) in any one (1) election.

(14) Subject to the provisions of subsection (18) of this section, no candidate or slate of candidates for nomination to any state, county, city, or district office, nor their campaign committees, nor anyone on their behalf, shall solicit or accept contributions for primary election expenses after the date of the primary. No person other than the candidate or slate of candidates shall contribute for primary election expenses after the date of the primary.

(15) Subject to the provisions of subsection (18) of this section, no candidate or slate of candidates for any state, county, city, or district office at a regular election, nor their campaign committees, nor anyone on their behalf, shall solicit or accept contributions for regular election expenses after the date of the regular election. No person other than the candidate or slate of candidates shall contribute for regular election expenses after the date of the regular election.

(16) Subject to the provisions of subsection (18) of this section, no candidate or slate of candidates for nomination or election to any state, county, city, or district office, nor their campaign committees, nor anyone on their behalf, shall solicit or accept contributions for special election expenses after the date of the special election. No person other than the candidate or slate of candidates shall contribute for special election expenses after the date of the special election.

(17) The provisions of subsections (14) and (15) of this section shall apply only to those candidates in a primary or regular election which shall be conducted subsequent to January 1, 1989. The provisions of subsection (16) of this section shall apply only to those candidates or slates of candidates in a special election which shall be conducted subsequent to January 1, 1993.

(18) A candidate, slate of candidates, or a campaign committee may solicit and accept contributions after the date of a primary election, regular election, or special election to defray necessary expenses that arise after the date of the election associated with election contests, recounts, and recanvasses of a specific election, complaints regarding alleged campaign finance violations that are filed with the registry pertaining to a specific election, or other legal actions pertaining to a specific election to which a candidate, slate of candidates, or campaign committee is a party. Reports of contributions received and expenditures made after the date of the specific election shall be made in accordance with KRS 121.180.

(19) No slate of candidates for Governor and Lieutenant Governor or their immediate families shall loan any money, service, or other thing of value to their campaign, and all moneys, services, or other things of value which are loaned shall be deemed a contribution, which may not be recovered by the slate of candidates, except to the extent of a combined total of fifty thousand dollars ($50,000).

(20) No candidate, slate of candidates, committee, except a political issues committee, or contributing organization, nor anyone on their behalf, shall knowingly accept a contribution from a corporation, directly or indirectly.

(21) Nothing in this section shall be construed to restrict the ability of a corporation to administer its permanent committee insofar as its actions can be deemed not to influence an election as prohibited by KRS 121.025.

(22) No candidate, slate of candidates, or committee, nor anyone on their behalf, shall

solicit a contribution of money or services from a state employee, whether or not the employee is covered by the classified service provisions of KRS Chapter 18A. However, it shall not be a violation of this subsection for a state employee to receive a solicitation directed to him as a registered voter in an identified precinct as part of an overall plan to contact voters not identified as state employees.

(23) (a)   A candidate or a slate of candidates for elective public office shall not accept contributions from permanent committees which, in the aggregate, exceed fifty percent (50%) of the total contributions accepted by the candidate or a slate of candidates in any one (1) election or ten thousand dollars ($10,000) in any one (1) election, whichever is the greater amount. The percentage of the total contributions or dollar amounts of contributions accepted by a candidate or a slate of candidates in an election that is accepted from permanent committees shall be calculated as of the day of each election. Funds in a candidate's or a slate of candidates' campaign account which are carried forward from one (1) election to another shall not be considered in calculating the acceptable percentage or dollar amount of contributions which may be accepted from permanent committees for the election for which the funds are carried forward. A candidate or a slate of candidates may, without penalty, contribute funds to his campaign account not later than sixty (60) days following the election so as not to exceed the permitted percentage or dollar amount of contributions which may be accepted from permanent committees or the candidate or a slate of candidates may, not later than sixty (60) days after the end of the election, refund any excess permanent committee contributions on a pro rata basis to the permanent committees whose contributions are accepted after the aggregate limit has been reached.

(b)   The provisions of paragraph (a) of this subsection regarding the receipt of aggregate contributions from permanent committees in any one (1) election shall also apply separately to the receipt of aggregate contributions from executive committees of any county, district, state, or federal political party in any one (1) election.

(c)   The provisions of paragraph (a) of this subsection regarding the receipt of aggregate contributions from permanent committees in any one (1) election shall also apply separately to the receipt of aggregate contributions from caucus campaign committees.

(24) No candidate or slate of candidates for any office in this state shall accept a contribution, including an in-kind contribution, which is made from funds in a federal campaign account. No person shall make a contribution, including an in-kind contribution, from funds in a federal campaign account to any candidate or slate of candidates for any office in this state.

**Effective:** June 8, 2011

**History:**   Amended 2011 Ky. Acts ch. 51, sec. 1, effective June 8, 2011. -- Amended 2008 Ky. Acts ch. 129, sec. 11, effective July 15, 2008. -- Amended 2005 Ky. Acts ch. 105, sec. 5, effective March 16, 2005. -- Amended 2000 Ky. Acts ch. 398, sec. 4, effective July 14, 2000. -- Amended 1998 Ky. Acts ch. 599, sec. 1, effective July 15, 1998. -- Amended 1996 Ky. Acts ch. 153, sec. 3, effective July 15, 1996; ch. 188,

sec. 1, effective July 15, 1996; and ch. 372, sec. 1, effective April 12, 1996. -- Amended 1994 Ky. Acts ch. 458, sec. 8, effective July 15, 1994. -- Amended 1993 (1st Extra. Sess.) Ky. Acts ch. 4, sec. 57, effective September 16, 1993. -- Amended 1992 Ky. Acts ch. 288, sec. 25, effective July 14, 1992. -- Amended 1990 Ky. Acts ch. 314, sec. 1, effective July 13, 1990; and ch. 476, Pt. II, sec. 73, effective July 13, 1990. -- Amended 1988 Ky. Acts ch. 15, sec. 1, effective July 15, 1988; ch. 55, sec. 1, effective March 11, 1988; ch. 118, sec. 2, effective 1991; and ch. 341, sec. 43, effective July 15, 1988. -- Amended 1986 Ky. Acts ch. 100, sec. 4, effective July 15, 1986; and ch. 168, sec. 1, effective July 15, 1986. -- Amended 1980 Ky. Acts ch. 292, sec. 6, effective July 15, 1980. -- Created 1974 Ky. Acts ch. 130, sec. 187.

EXHIBIT 3



## KENTUCKY REGISTRY OF ELECTION FINANCE

**Steven L. Beshear**
Governor

140 Walnut Street
Frankfort, Kentucky 40601-3240
Phone: (502) 573-2226
Fax: (502) 573-5622
www.kref.ky.gov

Craig C. Dilger
Chairman

Sarah M. Jackson
Executive Director

Emily Dennis
General Counsel

### ADVISORY OPINION 2014-005

**Any Advisory Opinion rendered by the Registry under subsection (1) or (2) of this section may be relied upon only by the person or committee involved in the specific transaction or activity with respect to which the Advisory Opinion is required. KRS 121.135(4).**

August 20, 2014

Mr. Kenneth C. Moellman, Jr.
Chair, Libertarian Party of Kentucky
P.O. Box 432
Independence, KY 41051

Mr. Joshua Brotherton
Candidate for Boone County Commissioner
2379 Graves Rd.
Hebron, KY 41048

**In re:   Receipt of Primary Election Contributions by Libertarian Party Candidates
(AO 2014-005)**

Dear Mr. Moellman and Mr. Brotherton:

This Advisory Opinion is sent in response to your request regarding the proposed activities of Josh Brotherton (Brotherton), Libertarian Party (LPKY) Candidate for Boone County Commissioner. The Registry received your request on July 21, 2014. As required by KRS 121.135(5)(a), your request was posted for public comment on July 24, 2014. No public comments were received.

Your request generally concerns the question of whether Kentucky's Campaign Finance Law precludes LPKY candidates such as Brotherton from receiving primary election contributions. If primary election contributions are permitted, you also request further guidance on reporting deadlines applicable to LPKY candidates such as Brotherton. Regarding this issue,



KentuckyUnbridledSpirit.com                                          An Equal Opportunity Employer M/F/D

Page 2
Mr. Ken Moellman
Mr. Joshua Brotherton
August 20, 2014

**In re:**   **Ability of Libertarian Party Candidates to solicit and receive primary election contributions (AO 2014-005)**

you suggest that the Registry apply standards outlined by the Federal Election Commission (FEC) which allow independent and non-major party candidates to choose a "primary" date, which may or may not be the same as the state's primary election date.

At the outset, please note that the $1,000 per election individual contribution limit authorized by KRS 121.150(6) does not translate into a maximum $2,000 annual contribution limit as stated in your letter, because no state or local elected official in Kentucky is elected on an annual basis. In addition, the Registry has recognized on more than one occasion that it is not bound to use the KRS Chapter 118 definition of a "political party" in interpreting KRS Chapter 121.[1] Thus, there is no basis upon which to conclude that the Registry's interpretation of KRS Chapter 121 " . . . limits an individual donor to a maximum contribution of $1000 per year, per LPKY candidate, versus their Democrat and Republican counterparts to whom an individual donor could contribute up to $2000 per year, per candidate."

These preliminary matters aside, you specifically request an Advisory Opinion on the following issues:

1. Will the Registry allow Brotherton to accept donations from individual donors for both a primary election and a general election, even though LPKY does not currently meet the definition of "political party" as outlined in KRS 118.015?

2. If the answer to the first question is in the affirmative, will the Registry use the same guidelines as the FEC? If in the negative, will the Registry provide those guidelines?

3. If the answer to either the first or second question is in the affirmative, when would a Libertarian candidate be required to file a post-primary report with the Registry?

4. Does the response to this Request for Advisory Opinion apply to all candidates of the Libertarian Party of Kentucky subject to the regulations of the Registry, or will each and every candidate of LPKY be required to make such a request?

KRS 121.015(8) defines "candidate" to mean "any person who has received contributions or made expenditures, has appointed a campaign treasurer; or has given his consent for any other person to receive contributions or make expenditures with a view to bringing about his nomination or election to public office, except federal office. The Registry has consistently advised prospective candidates that the receipt or expenditure of funds, the appointment of a campaign treasurer, or the authorization of another to raise and spend funds, *with a view to bringing about one's nomination or election to public office*, is the bright line test for when one becomes a candidate under KRS 121.015(8). Emphasis added.

---

[1] See Case No. 2012-338 (*In re: Campaign Fund of Ken Moellman for State Treasurer, et al.*) and AO 2013-003.

Page 3
Mr. Ken Moellman
Mr. Joshua Brotherton
August 20, 2014

In re:   **Ability of Libertarian Party Candidates to solicit and receive primary election contributions**
(AO 2014-005)

"Election" is defined as "any primary, regular, or special election to fill vacancies regardless of whether a candidate or slate of candidates is opposed. See KRS 121.015(2). A candidate may only accept a contribution valued at up to one thousand dollars ($1,000) from an adult individual in any one (1) election. See KRS 121.150(6). With respect to non-partisan judicial races – which do not appear on the primary election ballot unless more than two (2) candidates file for the same judicial office - the Registry has previously opined that, regardless of whether the judicial candidate's name appears on the primary ballot, the candidate may accept $1,000 per individual donor in both the primary and regular (general) elections. See Advisory Opinion 2000-001. The logic applicable to non-partisan judicial candidates should also apply to Brotherton and other similarly situated LPKY candidates; however, the complicating factor in this case is that Brotherton's request for an Advisory Opinion on this issue was received on July 21, 2014, well after the primary election date of May 20, 2014. The primary election reporting cycle set forth in KRS 121.180, consisting of required campaign finance reports to be filed 32 days prior, 15 days prior, and 30 days after the election, has passed. Therefore, Brotherton is time-barred from registering to raise and spend funds for the 2014 primary, but he may accept contributions and make expenditures for the 2014 general election and must register to do so.

For future elections, Brotherton may register his candidacy prior to the period of time in which he is allowed to officially file for ballot access with the Secretary of State or County Clerk by notifying the Registry of his intent to seek elected office, including his name, birth date, mailing address, and telephone number, the elected office sought, the year of the election, the campaign treasurer's name, mailing address, and telephone number, and the name and address of the financial institution designated as the campaign depository. See pp. 4-5, *Candidate Guide to Campaign Finance* (KREF 016/ Revised 08/2011).

In response to your second question, KRS 121.180 provides the guidelines for filing Election Finance Statements. The reporting guidelines in KRS 121.180 are election specific and would appear to preclude non-major and independent candidates from choosing an alternative reporting schedule in the manner that Federal Election Commission guidelines permit. For your reference purposes, filing deadlines for the 2014 regular (general) election cycle are enclosed.

In response to your final question, all similarly situated Libertarian Party candidates may generally follow the guidelines of this Advisory Opinion. However, there may be instances where a candidate's circumstance differs significantly from the facts described in your request. In those instances, a separate Advisory Opinion Request from the candidate is appropriate.

Page 4
Mr. Ken Moellman
Mr. Joshua Brotherton
August 20, 2014

In re:   **Ability of Libertarian Party Candidates to solicit and receive primary election contributions**
         **(AO 2014-005)**


       Please keep in mind that this Advisory Opinion is based on the specific facts set forth in your written request, does not cover past conduct, and only may be applied to cover the conduct in the transaction you describe. If you have any questions concerning this Advisory Opinion, please do not hesitate to contact the Registry. Thank you.

       Very truly yours,

       *Emily Dennis*

       EMILY DENNIS
       General Counsel

Enclosure
Cc:    Registry Members
      Sarah M. Jackson, Executive Director

| 2014 Regular (General) Election - Candidate Reporting Dates | | | |
|---|---|---|---|
| Report | Due | Grace Period Ends | Due From |
| 32-day pre-General report | 10/03/2014 | 10/08/2014 | All Candidates AND Campaign Committees for Candidates who elected to receive/spend over $3,000 for the 2014 General Election |
| 15-day pre-General report | 10/20/2014 | 10/27/2014 | All Candidates AND Campaign Committees for Candidates who elected to receive/spend over $3,000 for the 2014 General Election |
| 30-day post-General report | 12/04/2014 | 12/09/2014 | All Candidates AND Campaign Committees for Candidates who elected to receive/spend over $1,000 for the 2014 General Election |
| 60-day post-General report | 01/03/2015 | 01/08/2015 | All Candidates AND Campaign Committees for Candidates with debt and/or surplus funds remaining on the 30-day post-General Election report |

## ADVISORY OPINION 2000-001

**Any advisory opinion rendered by the registry under subsection (1) or (2) of this section may be relied upon only by the person or committee involved in the specific transaction or activity with respect to which the advisory opinion is rendered.  KRS 121.135(4).**

February 25, 2000

Darren L. Embry, Chairman
Forgy for Justice
1100 Vine Center
Lexington, KY 40507

Dear Mr. Embry:

This is in reference to your January 27, 2000 letter requesting an advisory opinion regarding the solicitation of campaign contributions for a judicial race. Your letter states that you are the chair of a campaign committee established to solicit contributions and make expenditures on behalf of Larry Forgy's candidacy for Kentucky Supreme Court Justice. You ask the Registry to consider the following questions:

(1)     **Whether a campaign committee may accept both $1,000.00 for a primary election and $1,000.00 for a general election if there are only two candidates for the office and a primary is therefore unnecessary?**

KRS 121.015(2) defines an election as "any primary, runoff primary, regular or special election to fill vacancies <u>regardless</u> of whether a candidate or slate of candidates is opposed or unopposed in an election." (Emphasis added.) Each election is considered a separate election under KRS Chapter 121. KRS 121.015(2). KRS 121.150(6) imposes on candidates a contribution limit of no more than "one thousand dollars ($1,000) from any person in any one (1) election." Therefore, a candidate for judicial office may accept

Mr. Darren L. Embry, Chairman
Forgy for Justice
February 25, 2000
AO 00-001
Page 2

$1,000 per individual contributor in the primary election and $1,000 per individual contributor in the regular (general) election. Under KRS Chapter 121, it is irrelevant that, as a result of only two (2) candidates filing for a judicial seat, the candidates will not appear on the primary ballot.

> **(2)   Whether individuals who solicit contributions on behalf of this campaign committee, but who do not themselves receive these contributions, must register with the Registry as fundraisers?**

KRS 121.015(11) defines a fundraiser as "an individual who directly solicits and secures contributions on behalf of a candidate or slate of candidate for a statewide-elected state office or an office in a jurisdiction with a population in excess of two hundred thousand (200,000) residents." Individuals who solicit funds on behalf of a campaign committee, but who <u>do not receive</u> contributions resulting from such solicitations, are not fundraisers as defined by KRS 121.015(11) and are not required to register with the Registry under KRS 121.170(2). <u>See</u> KREF Advisory Opinion 93-015 ("By its plain language, [KRS 121.015(11)] requires that a fundraiser both solicit and directly receive the contribution that he or she has solicited.")

This opinion reflects the Registry's consideration of the specific transactions posed by you letter. If you have any additional questions, please do not hesitate to contact the Registry staff.

Sincerely,

Rosemary F. Center
General Counsel

RFC/jh

Enclosures