IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:15-cv-155 (WOB-JGW)

JOHN SCHICKEL, ET AL.                              PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

CRAIG C. DILGER, ET AL.                            DEFENDANTS

This matter is before the Court on the motion to reconsider and amend order, or to stay enforcement of order, by the Kentucky Registry of Election Finance ("KREF") defendants (Doc. 125), the plaintiff's response thereto (Doc. 130), and the defendants' reply brief (Doc. 135). The Court has reviewed this matter and concludes that oral argument is unnecessary.

On June 6, 2017, this Court issued a Memorandum Opinion and Order granting in part and denying in part the parties' motions for summary judgment and plaintiffs' motion for a permanent injunction. (Doc. 122). The Court held, as relevant here, that KRS 121.015(3)(b) is unconstitutional as viewpoint discrimination in violation of the Equal Protection Clause. *Id.* at 6-9. That is, by defining "caucus campaign committee" to include only Democratic and Republican caucus campaign committees, the statute prevents any other caucus campaign committees from enjoying the higher contribution limits found in KRS 121.150(11).

Here, the KREF defendants argue that the Court improperly found that "the Democratic and Republican political parties control caucus campaign committees." (Doc. 125 at 3). In support, defendants cite the Court's statement that "KRS § 121.150(11) allows two specific political parties to receive the highest contributions: executive committees of political parties and campaign caucus committees." (Doc. 122 at 7). It is true that caucus campaign committee are not "political parties," and to that extent the statement was inaccurate.

However, the Court did not make the "finding" that defendants assert. Nor would it have been necessary to the Court's legal conclusion, as defendants imply. *See* Doc. 125 at 1 ("The Order declares the definition of caucus campaign committee (KRS 121.015(3)(b)) to be facially unconstitutional *based on the mistaken assumption that caucus campaign committees are controlled by the Democratic and Republican parties*.") (emphasis added).

In fact, the Court specifically recognized that caucus campaign committees are separate from the political parties' executive committees. (*Id.* at 9). The Court held that this distinction did not, however, "explain the exclusionary definition found in subsection (3)(b)." (*Id.*).

Nor did any such misapprehension determine the level of scrutiny applied by the Court. But even if a lesser standard applied, the same legal conclusion ensues because the KREF

defendants have identified *no* state interest that is served by limiting the definition of caucus campaign committees to those labelled only Republican and Democratic. The testimony cited in plaintiffs' opposition brief makes this abundantly clear. *See* Doc. 130 at 7.

Moreover, the fact that KRS § 121.015(3)(b) excludes all but Republican and Democratic-labelled caucus campaign committees from its definition aligns the statute squarely with one of the dangers identified in *Buckley*: that "contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." *Buckley v. Valeo*, 424 U.S. 1, 21 (1976).

This is exactly plaintiffs' point here. Because this statute includes only the committees identified with the two main political parties, committees identified with any other political party are unable to avail themselves of the higher contribution limits found in KRS § 121.150(11). Any such committees are thereby prevented from raising campaign funds on a level playing field.

The Court uses the term "labelled" above, rather than "affiliated" or "associated," in recognition of defendants' argument that these committees are independent bodies who are free to donate their funds to candidates of any political persuasion. The Court also notes that defendants have identified two instances

3

where the Republican-labelled committees have donated to Independent candidates.

This, however, does not advance defendants' cause. One reasonably assumes that donors give their money to campaign committees with whom they have a political affinity, and further that they assume their donations will be spent accordingly. If not, why label the caucus campaign committees with party names at all? Putting aside that rhetorical question, the Court concludes that two instances of out-of-party candidate contributions do not neutralize the facial unconstitutionality of the statute.

Further, defendants' suggestion that this constitutional infirmity might be remedied by simply labelling the caucus campaign committees "majority" and "minority" committees is fallacious. Any citizen who is politically minded enough to donate their money to a caucus campaign committee will know which of the two main parties is in power at the time, and they will donate accordingly. And this suggestion also assumes — like KRS § 121.015(3)(b) — that only two political parties are in the caucus campaign ring.

Moving on, defendants also lament that invalidating KRS § 121.015(3)(b) while leaving KRS § 121.150(11) intact "creates a significant void in the campaign finance law that only the legislature has the authority to fix." (Doc. 125 at 2). That may be true. But KRS § 121.150(11) is not unconstitutional, and the Court thus has no authority to strike or alter it. Obviously,

then, the task falls to the Kentucky legislature to address these issues and the others identified by this Court.

The Court further finds defendants' request for a stay to be unwarranted. Staying the effect of these rulings would irreparably harm plaintiff Watson, who is running for office in 2018 and states, understandably, that he needs to engage in fundraising now.

Further, defendants may immediately appeal this Court's injunction to the United States Court of Appeals for the Sixth Circuit. This would not prohibit the Kentucky General Assembly from acting in the meantime to address these issues. Indeed, the Court takes judicial notice that the legislature is scheduled to convene on January 2, 2018, in the very near future. *See* www.ballotpedia.org/Kentucky_General_Assembly.

The Court also rejects defendants' argument that plaintiffs failed to give fair notice of their challenge to KRS § 121.015(3)(b). First, defendants only raise this argument for the first time in their reply brief in support of the present motion to amend. (Doc. 135 at 4). Second, plaintiffs explicitly argued the unconstitutionality of KRS 121.015(3)(b) in their motion for summary judgment and for permanent injunction (Doc. 63 at 34-35), and the KREF defendants addressed it in their response (Doc. 67 at 19). This argument is belated and without merit.

Finally, a word about the permanent injunction. The injunction entered concurrently herewith is drafted narrowly to address only the unconstitutionality of KRS § 121.015(3)(b). As noted, KRS § 121.150(11) is not unconstitutional on its face, and it is not addressed. The Court also will not adopt plaintiff's suggestion to include an affirmative obligation for the KREF defendants to allow alternate parties to create their own caucus campaign committees. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698-1700 (2017) (noting that nullification of unconstitutional statute that benefits one class is better course in some circumstances than extending benefits to other class). That matter, as noted, is for the Kentucky legislature.

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that defendants' motion to reconsider and amend order, or to stay enforcement of order (Doc. 125) be, and is hereby, **DENIED**. A permanent injunction enforcing the Court's prior Memorandum Opinion and Order shall enter concurrently herewith.

This 1st day of December, 2017.



Signed By:
*William O. Bertelsman* WOB
United States District Judge